MCDERMOTT WILL & EMERY LLP
WILLIAM G. GAEDE, III (136184)
wgaede@mwe.com
BHANU K. SADASIVAN (233429)
bsadasivan@mwe.com
BRENT A. HAWKINS (314266)
bhawkins@mwe.com
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
Telephone:     (650) 815-7400
Facsimile:     (650) 815-7401
  *Attorneys for 23andMe, Inc.* ● ●
*Attorneys for 23andMe, Inc.*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 23ANDME, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT, VIOLATIONS OF THE LANHAM ACT, CAL. BUS. & PROF. CODE §§ 17200 AND 17500, AND DECLARATORY RELIEF OF NO TRADEMARK INFRINGEMENT AND TRADEMARK INVALIDITY** |
| v. | |
| ANCESTRY.COM DNA, LLC, ANCESTRY.COM OPERATIONS INC., and ANCESTRY.COM LLC, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff 23andMe, Inc., complains against Defendants Ancestry.com DNA, LLC, Ancestry.com Operations Inc. and Ancestry.com LLC (collectively "Defendants") as follows:

**THE PARTIES**

1.      Plaintiff 23andMe, Inc. is a corporation organized under the laws of Delaware, having its principal place of business at 899 W. Evelyn Avenue, Mountain View, CA 94041-2855.

2.      On information and belief, Defendant Ancestry.com DNA, LLC ("Ancestry DNA") is a privately held company, incorporated and organized under the laws of Delaware. Ancestry DNA is registered and conducts business in the State of California, with a principal business office in California of 153 Townsend St., Suite 800, San Francisco, CA 94107, and its headquarters at 1300 West Traverse Parkway, Lehi, Utah 84043.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

3.      On information and belief, Defendant Ancestry.com Operations Inc. ("Ancestry Operations") is a privately held company, incorporated and organized under the laws of Delaware.  Ancestry Operations is registered and conducts business in the State of California, with a principal business office in California of 153 Townsend St., Suite 800, San Francisco, CA 94107, and its headquarters at 1300 West Traverse Parkway, Lehi, Utah 84043.   Ancestry Operations is listed with the California Secretary of State as being the managing company of Ancestry DNA.

4.      On information and belief, Defendant Ancestry.com LLC ("Ancestry LLC") is a privately held company, incorporated and organized under the laws of Delaware, and does business in California through its subsidiaries, Ancestry DNA and Ancestry Operations.

5.      Upon information and belief, Defendants are in the business of providing a network of ancestral, genealogical, historical record and genetic genealogy testing, searching and websites.

### JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code § 100, *et seq*., and false and misleading advertising and declaratory judgment under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202.

8.      All other claims asserted in this action arise out of the same transaction or occurrence, so that this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over Ancestry DNA by virtue of the fact that Ancestry DNA conducts business in the State of California, and has availed itself of the rights and benefits under California law, and has engaged in substantial and continuous contacts in the State of California.  Ancestry DNA is registered to do business in the State of California with an office at 153 Townsend St., Ste. 800, San Francisco, CA 94107.   Ancestry DNA makes, uses, offers to sell, and/or sells in, this District and elsewhere in the United States, its services and systems for

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   determining relative relationship, through regular distribution channels, knowing such services

2   and systems would be used, offered for sale, and/or sold in this District.  Further, Ancestry DNA

3   has engaged in this District in the wrongful acts out of which the causes of action complained of

4   herein arise.

5       10.     This Court has personal jurisdiction over Ancestry Operations by virtue of the fact

6   that Ancestry Operations conducts business in the State of California, and has availed itself of the

7   rights and benefits under California law, and has engaged in substantial and continuous contacts

8   in the State of California.  Ancestry Operations is registered to do business in the State of

9   California with an office at 153 Townsend St., Ste. 800, San Francisco, CA 94107.   On

10  information and belief, Ancestry Operations through its own acts and/or through the acts of its

11  affiliated companies (acting as agent or alter egos) makes, uses, offers to sell, and/or sells in, this

12  District and elsewhere in the United States, its services and systems for determining relative

13  relationship, through regular distribution channels, knowing such services and systems would be

14  used, offered for sale, and/or sold in this District.  On further information and belief, Ancestry

15  Operations owns the ANCESTRY trademark.  Further, Ancestry Operations has engaged in this

16  District in the wrongful acts out of which the causes of action complained of herein arise.

17      11.     This Court has personal jurisdiction over Ancestry LLC because Ancestry LLC,

18  among other things, either by itself or through its agent, Ancestry DNA and/or Ancestry

19  Operations conducts business in the State of California, and has availed itself of the rights and

20  benefits under California law.  In addition, Ancestry LLC through its own acts and/or through the

21  acts of its affiliated companies (acting as agent or alter egos) makes, uses, offers to sell, and/or

22  sells in, this District and elsewhere in the United States, its services and systems for determining

23  relative relationship, through regular distribution channels, knowing such services and systems

24  would be used, offered for sale, and/or sold in this District.  Further, Ancestry LLC has engaged

25  in this District in the wrongful acts out of which the causes of action complained of herein arise.

26      12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400.

27  Defendants have an office in San Francisco, California and employs 300 people there.

28  (https://www.ancestry.com/corporate/about-ancestry/company-facts,   attached   as   Exhibit   1.)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

Defendants advertise that with a view of the Bay Bridge, fully stocked kitchen and open workspace, "you might find yourself actually looking forward to going to work" in its San Francisco office. (https://www.ancestry.com/corporate/careers/locations, attached as Exhibit 2.) On information and belief, the San Francisco office employs and wishes to employ additional people in three departments – corporate, DNA and family history – to perform a variety of jobs including as scientists, engineers, managers, analyst and administrators. (https://www.ancestry.com/corporate/careers/search-jobs/location/san-francisco, attached as Exhibit 3.)

**THE PATENT-IN-SUIT**

13.     On June 11, 2013, United States Patent No. 8,463,554 (the "'554 Patent") entitled "Finding Relatives in a Database" issued to 23andMe, Inc., as assignee of the inventors. (A copy of the '554 Patent is attached as Exhibit 4.)

14.     The '554 Patent has been owned by 23andMe at all times, is fully maintained, and is valid and enforceable.

**23ANDME AND ITS PIONEERING INVENTION**

15.     23andMe is a pioneer in the field of personal genetics. It was selected as a 2008 Technology Pioneer by the World Economic Forum and its Personal Genome Service™ was named TIME Magazine's Invention of the Year in 2008. MIT Technology Review listed 23andMe among its "50 Smartest Companies, 2017" and Fast Company featured it as #2 Most Innovative Health Company in 2018.

16.     Founded in 2006, the company's goal is to help people access, understand and benefit from the human genome. The company is built on bringing science to its customers that helps them in meaningful ways, including in understanding ancestry and relationships.

17.     The prior art generally taught genetic ancestry techniques based on Y-DNA (DNA in the Y chromosome of males) or mitochondrial DNA (mtDNA). As taught in the prior art, Y-DNA may be useful for testing patrilineal ancestry of a man since the Y-DNA is passed down unchanged from father to son, aside from a small amount of mutation. Likewise, mtDNA may be useful for testing a person's matrilineal ancestry since it is passed down mostly unchanged from mother to children. Genetic ancestry testing techniques based on Y-DNA or mtDNA, however,

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

are typically less effective for identifying closer relationships.   Furthermore, many relative relationships are not strictly matrilineal or patrilineal and cannot be detected by these techniques.

18.    To address these and other deficiencies, the inventors of the patent-in-suit developed innovative and specific ways and systems to determine a relative relationship between two individuals who share a common ancestor.  The '554 Patent claims a certain and specific way to determine relative relationship by looking at recombinable DNA sequence information, rather than whole genome, of two individuals stored in a database, determining, based in part on a comparison of the recombinable DNA sequence information of the two individuals, a predicted degree of relative relationship that corresponds to the number of generations within which the two individuals share a common ancestry, and notifying at least one of the individuals about the relative relationship with the individual.  The patent explains that only relatives will share long stretches of genome regions where their recombinable DNA is completely or nearly identical and such regions are referred to as "Identical by Descent" (IBD) regions.

19.    For example, the '554 Patent claims a particular way to use the IBD regions to determine the predicted degree of relationship between two individuals.  As exemplified in Claim 7, this comprises identifying IBD regions and the amount of DNA sequence of the IBD region, among other things.  The amount of DNA sequence information includes a sum of the lengths of IBD regions, percentage of DNA shared in the IBD regions, or both.  A greater amount of DNA sequence information of the IBD regions indicates a closer predicted degree of relationship.

20.    The '554 Patent further claims, *inter alia*, a certain and specific way to identify the IBD regions.   For example, and as exemplified in Claim 12, the patent claims identifying sequence of small nucleotide polymorphisms (SNPs) in two individuals.  An individual's genome may have ~650,000 SNPs.  A call can be made for each particular SNP as heterozygous, *i.e.* has two different alleles, with one from each parent (example, AB), or homozygous, *i.e.* has the same alleles (example, AA or BB).  The process of IBD identification includes identifying consecutive opposite-homozygous calls in the SNP sequences of the two individuals and determining whether a region between the two opposite-homozygous calls is an IBD region, based at least on the distance between the two opposite homozygous calls.

- 5 -
**COMPLAINT**

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

21.     The claims at issue here are not directed to laws of nature, natural phenomena, or abstract ideas.   Instead, they are directed to specific applications of identifying relative relatedness and notifying end users of such relatedness through methods and systems that use computer processors drawing from a database and comprise, *e.g.*, steps such as:  (1) identifying one or more IBD regions in which a portion of recombinable DNA of a first user and a second user arose from same DNA sequence of an ancestor; (2) the predicted degree of relationship depends at least in part on an amount of DNA sequence information of the IBD regions; (3) the amount of DNA sequence information of the IBD regions includes a sum of the lengths of IBD regions, percentage of DNA shared in the IBD regions, or both; and (4) a greater amount of DNA sequence information of the IBD regions indicates a closer predicted degree of relationship.

22.     Such techniques as exemplified in claims 5, 7-8, 12-14, 17, 22, 31-32 and 37-38 are novel, non-obvious and involve more than the performance of well-understood, routine and conventional activities previously known in the industry.

## INFRINGING ACTS BY DEFENDANTS

23.     On information and belief, at least as of December 2013, Defendants have been offering for sale and selling in this District and across the United States services to identify relatives who share parts of their DNA.   These services are sold as part of Defendants' AncestryDNA kits.

24.     White papers published by Defendants describe the technology underlying Defendants' services to identify relatives who share parts of their DNA.  (*See e.g.,* Ancestry DNA Matching White Paper, https://www.ancestry.com/corporate/sites/default/files/AncestryDNA-Matching-White-Paper.pdf, attached as Exhibit 5.)

25.     When Defendants perform their services to identify relatives who share parts of their DNA, they infringe literally or under the doctrine of equivalents at least Claims 5, 7-8, 12-14, 17, 22, 31-32, and 37-38 of the '544 Patent.  As an example, Defendants perform each and every step

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

of Claim 12, which claim is dependent on Claim 7, and which claim in turn is dependent on Claim 1.  Claim 1 is recited below:

1.  A method for determining a relative relationship of people who share a common ancestor within a threshold number of generations, comprising:

obtaining recombinable deoxyribonucleic acid (DNA) sequence information of a first user and recombinable sequence DNA information of a second user; wherein the recombinable DNA sequence information of the first user and the recombinable DNA sequence information of the second user are stored in a database comprising recombinable DNA sequence information of a plurality of users;

determining, using one or more computer processors, based at least in part on a comparison of the recombinable DNA sequence information of the first user and the recombinable DNA sequence information of the second user, a predicted degree of relative relationship that corresponds to a number of generations within which the first user and the second user share a common ancestor;

and notifying at least the first user about the relative relationship with the second user.

26.     Defendants perform each and every step of the foregoing Claim 1 (which is an allegation within the meaning of the Federal Rules of Civil Procedure) and therefore a response to each claim element is required.

27.     On information and belief, Defendants detect "matches" from DNA, *i.e.*, "long chromosome segments shared by pairs of individuals that are suggestive of recent common ancestry" "to estimate how people are related to one another (e.g. first cousins)."  (Ex. 5, Ancestry DNA Matching White Paper, p. 2.)

28.     Defendants offer a DNA test which includes a saliva collection tube.  The saliva is sent by the user and processed in a lab either by Defendants or their agent.  The DNA test uses microarray-based autosomal DNA testing (https://www.ancestry.com/dna/en/legal/us/faq#about-1, attached as Exhibit 6), and the information is entered in Defendants' database.

29.     On information and belief, Defendants perform DNA matching by identifying, using one or more computer processors, in the computer database "the DNA segments on the 22 chromosome pairs that are identical-by-descent [IBD] between pairs of individuals."  (Ex. 5, Ancestry DNA Matching White Paper, p. 5.)  "[T[he more IBD detected between two samples of DNA, the more likely it is that the two people share a recent common ancestor."  (*Id*. at 8.)  After

the IBD segments are identified, Defendants use this information to estimate how people are related to one other.  (*Id.* at 1.)

30.     When the AncestryDNA Kit results are ready, the user receives an email generated by the computer system from Defendants notifying the user, with a link to view the results.  The results are also available online in a password-protected Ancestry.com account of the user. (Ex. 6, https://www.ancestry.com/dna/en/legal/us/faq#about-1.)

31.     Claim 7 is recited below:

7.  The method of claim 1, wherein:

    determining the predicted degree of relationship between the first user and the second user includes identifying one or more Inheritance By Descent (IBD) regions in which a portion of recombinable DNA sequence of the first user and a portion of recombinable DNA sequence of the second user arose from same DNA sequence of an ancestor;

    the predicted degree of relationship depends at least in part on an amount of DNA sequence information of the IBD regions;

    the amount of DNA sequence information of the IBD regions includes a sum of the lengths of IBD regions, percentage of DNA shared in the IBD regions, or both;

    and a greater amount of DNA sequence information of the IBD regions indicates a closer predicted degree of relationship.

32.     Defendants perform each and every step of the foregoing Claim 7 (which is an allegation within the meaning of the Federal Rules of Civil Procedure) and therefore a response to each claim element is required.

33.     On information and belief, Defendants provide information about predicted relationships, such as 3rd cousins, between individuals.  Defendants also provide confidence level of the predicted match, which is based on the amount of DNA shared between the individuals.  Higher the confidence score, higher is the likelihood of a single recent common ancestor. (https://blogs.ancestry.com/ancestry/2016/12/01/exploring-your-dna-results-further/, attached as Exhibit 7.)

34.     On information and belief, Defendants also provide information about the amount of DNA shared between two individuals and the predicted degree of relationship based upon the amount of shared DNA.  If two individuals share ~3475 centimorgans of DNA, the possible

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

relationship between the individuals include parent, child, or identical twin. (Ex. 7, https://blogs.ancestry.com/ancestry/2016/12/01/exploring-your-dna-results-further/.)



35.     On information and belief, Defendants also use "the total length of all shared segments to estimate the relationship between two genetic relatives."  (https://www.slideshare.net /Hadoop_Summit/th-1100ahall1yetman, attached as Exhibit 8.)

36.     Claims 12 is recited below:

The method of claim 7, wherein identifying one or more IBD regions includes:

identifying consecutive opposite-homozygous calls in a SNP sequence of the first user and in a SNP sequence of the second user, wherein the first user and the second user have opposite-homozygous calls at a given SNP location where the first user and the second user do not share an allele;

determining, based at least in part on a distance between the consecutive opposite-homozygous calls, whether a region between the opposite-homozygous calls is an IBD region.

37.     Defendants perform each and every step of the foregoing Claim 12 (which is an allegation within the meaning of the Federal Rules of Civil Procedure) and therefore a response to each claim element is required.

38.     On information and belief, Defendants identify alleles at all SNPs that are identical in two individuals and extends the match in both directions until a homozygous mismatch is detected.  Defendants define the IBD region by the start and end positions of the SNPs included in the segment.  If the segment is longer than 6 centimorgan, Defendants store that segment as a match in its database. (*See* Ex. 5, Ancestry DNA Matching White Paper, pp. 16-17.)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

# FIRST CAUSE OF ACTION
## (Infringement of the '554 Patent)

39.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–38.

40.    On information and belief, Defendants have infringed and continues to infringe at least Claims 5, 7-8, 12-14, 17, 22, 31-32, and 37-38 of the '554 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents by making, using, offering to sell and/or selling their services and/or systems for determining relative relationship, including the kit and services marketed under the name AncestryDNA Kit.

41.    Ancestry LLC has induced and continues to induce infringement of at least one asserted claim of the '554 Patent pursuant to 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting others, including Ancestry DNA, who make, use, offer to sell, and/or sell their infringing services and/or systems for determining relative relationship and directly infringe the '554 Patent.  Ancestry LLC does so with the specific intent to encourage their infringement, through activities such as marketing, advertising and promoting infringing services and/or systems and making available information about the infringing services and/or systems.  Such activities are designed to instruct, invite, encourage, enable and facilitate the making, use, offer for sale, and sale of infringing services and systems.  For example, Ancestry LLC maintains and/or provides or directs contents for websites, including the following webpages:  http://www.ancestry.com (providing "ExploreAncestryDNA"), http://www.ancestry.com/corporate/about-ancestry/our-brands ("This simple-to-take saliva-based DNA test  . . . uses advanced genomic science to connect distant relatives . . . ) that offer technical, support and promotional information regarding Defendants' infringing services and systems for determining relative relationship.

42.    On information and belief, Defendants' continued infringement of the '544 Patent is willful since at least as of the filing of this lawsuit.

43.    23andMe will be substantially and irreparably harmed if Defendants are not enjoined from infringing the '554 Patent.

DM_US 91354986-7.094896.0200

**COMPLAINT**

44.    23andMe has been injured by Defendants' infringement.

45.    This case is exceptional, and 23andMe is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**SECOND CAUSE OF ACTION**
**(Misleading Representations in Violation of Lanham Act, 15 U.S.C. § 1125)**

46.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–38.

47.    On information and belief, 23andMe and Defendants are the top two companies in the market based on customer size and directly compete in providing DNA ancestry tests and services.  Such competitive services include, by Defendants, the AncestryDNA Kit, and by 23andMe, the Ancestry and Health + Ancestry Services.

48.    Defendants are making and have a pattern of making misrepresentations that are misleading to the consumers to the detriment of 23andMe.  For example, Defendants boldly proclaim "**5X MORE REGIONS than other DNA tests\***."  A snapshot of Defendants' website on May 3, 2018 is reproduced below:



49.    Defendants, however, do not test 5X more regions than 23andMe.  Defendants acknowledge this fact but in small print in its disclaimer as shown above.  Even there, the disclaimer with respect to 23andMe is buried following other company names.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

50.    Such a disclaimer cannot and does not remedy the bold "5X more regions" headline.   Consumers who glance at the headline are likely to be misled into believing that Defendants tests 5X more regions than other DNA tests, including the 23andMe's Ancestry and Health + Ancestry Services.

51.    This is not the first time Defendants have made misleading statements.   Rather, Defendants have a pattern of making false and misleading statements.   Previously, Defendants made the false statement they tests "5X more regions than other DNA tests."   No disclaimer was included.   A snapshot of Defendants' website on March 29, 2018 is reproduced below:



52.    On March 27, 2018, 23andMe informed Defendants about their false statement and requested that Defendants discontinue their practice immediately.   Defendants, however, continued to promote their false claim until at least April 16, 2018 without any disclaimer.

//

//

//

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

- 12 -

**COMPLAINT**

53.     On or about April 17, 2018, Defendants added a disclaimer but at the end of their long web page and in such small font and color that the disclaimer is essentially hidden.  A snapshot of Defendants' website on April 17, 2018 is reproduced below:





//
//
//
//
//
//
//

DM_US 91354986-7.094896.0200

**COMPLAINT**

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

54.     On or about April 21, 2018, Defendants retooled their website to make a misleading claim that their DNA test provides "5X MORE DETAIL than other DNA tests."  A snapshot of Defendants' website on April 21, 2018 is reproduced below:



55.     On April 24, 2018, 23andMe informed Defendants about their misleading "5X more detail than other tests*" representation in their website as well as in television advertising and other digital media such as YouTube and again demanded that Defendants cease and desist from all such uses.  This "5X more detail" claim was unsubstantiated in that the Defendants' services do not test five times more regions and, given the nature of the genotyping services both companies provide that 23andMe pioneered, do not provide five times more detail on the ancestry services performed than in 23andMe's Ancestry and Health + Ancestry Services.

56.     Despite 23andMe's demand, Defendants continued to make misrepresentations about "5X more detail than other tests" in its website until at least April 29, 2018 and thereafter, on information and belief, switched to its misleading "5X MORE REGIONS" representations as depicted on the May 3, 2018, website with a small-type disclaimer that does not remedy the deceptive advertising in the headline.

57.     Notably, however, the misleading "5X more detail than other tests" statement continues to be believed and endorsed by the public.  For example, a genealogist blog in Facebook continues to tout the "5X more detail than other tests" without any disclaimer.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

DM_US 91354986-7.094896.0200                                                    **COMPLAINT**

(https://www.facebook.com/gegbound/, attached as Exhibit 9.)  In any event, as alleged above, the current "5X more regions" language misrepresents the Defendants' AncestryDNA services as having "5X more regions" than 23andMe's Ancestry and Health + Ancestry Services.

58.     As another example of Defendants' pattern of misleading representations, Defendants ran a perpetual "sale" of its $99 DNA test for "ONLY $79*," misleading consumers to believe a sale was ongoing, when in fact it was merely reduced price.  Defendants stopped their misleading advertising only after asked by 23andMe to desist from such misleading promotions.

59.     Defendants' conduct violates the Lanham Act under 15 U.S.C. § 1125 which provides:

> Any person who, on or in connection with any good or services, . . . uses in commerce any word, term, name, symbol, . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive…as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, . . . of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action . . .

60.     23andMe is informed and believes, and on that basis alleges, that Defendants have acted as described herein with the intent to cause damages to 23andMe's business and reputation and to increase Defendants' own actual and prospective business prospects and opportunities. Defendants' misleading representations are likely to affect purchasing decisions by members of the public because they concern quality or characteristics and price of available DNA tests.

61.     23andMe has no adequate remedy at law.  Defendants' repeated pattern of false and misleading advertising has caused, and will continue to cause irreparable injury to 23andMe's reputation, goodwill and business, if not enjoined.

62.     23andMe is further entitled to recover at a minimum damages sustained in consequence of Defendants' wrongful conduct and Defendants' profits until an injunction is

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   issued, in an amount to be determined; and to recover 23andMe's attorneys' fees and other costs

2   herein.

### THIRD CAUSE OF ACTION
**(Misleading Advertising in Violation of Cal. Bus. & Prof. Code § 17500, *et seq*.)**

5   63.   23andMe realleges and incorporates by reference the allegations contained in

6   paragraphs 1–38 and 46–62 of this Complaint as if set forth fully herein.

7   64.   Defendants have engaged in numerous deceptive and misleading advertising in

8   violation of Section 17500, *et seq*., of the California Business and Professions Code, including by

9   among other things, Defendants' price misrepresentations and misrepresentations that their DNA

10  test provides "5X more regions than other DNA tests" and "5X more detail than other DNA

11  tests."

12  65.   Members of the public are likely to be deceived about Defendants'

13  misrepresentations.  For example, at least one blogger continues to state that Defendants' tests

14  provide "5X more detail than other DNA tests" without any disclaimer, evidencing that the public

15  has been deceived by Defendants' practices.

16  66.   Defendants have engaged and will continue to engage in the wrongful acts alleged

17  herein, and thereby continue to violate Section 17500, *et seq*., of the California Business and

18  Professions Code.  Injunctive relief pursuant to California Business & Professions Code sections

19  17203 and 17535 is necessary to prevent and restrain further violations by Defendants.  Until

20  such an injunction is issued, 23andMe and members of the public will continue to suffer

21  irreparable harm for which there is no adequate remedy at law.  23andMe is also entitled to an

22  order of restitution and disgorgement of profits earned by Defendants by their wrongful conduct.

### FOURTH CAUSE OF ACTION
**(Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.)**

25  67.   23andMe realleges and incorporates by reference the allegations contained in

26  paragraphs 1–38 and 46–66 of this Complaint as if set forth fully herein.

27  68.   Defendants have engaged in numerous unlawful and unfair practices, and

28  promotions in violation of Section 17200, *et seq*., of the California Business and Professions

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

Code, including by among other things, unfair, deceptive, and misleading advertising about Defendants' DNA tests such that members of the public are likely to be deceived and have been deceived as discussed previously.

69.     Defendants have engaged and will continue to engage in the wrongful acts alleged herein, and thereby continue to violate Section 17240, *et seq*., of the California Business and Professions Code.  Injunctive relief pursuant to California Business & Professions Code sections 17203 and 17535 is necessary to prevent and restrain further violations by Defendants.  Until such an injunction is issued, 23andMe and members of the public will continue to suffer irreparable harm for which there is no adequate remedy at law.  23andMe is also entitled to an order of restitution and disgorgement of profits earned by Defendants by their wrongful conduct.

**FIFTH CAUSE OF ACTION**
**(Declaratory Judgment of No Trademark Infringement)**

70.     In addition to trespassing 23andMe's patent rights and making misleading representations about 23andMe's Ancestry and Health + Ancestry Services, Defendants are also implausibly asserting consumer confusion from 23andMe's use of the word "Ancestry" in certain of 23andMe's advertising and on certain of 23andMe's products and that this constitutes alleged infringement of Defendants' Registered Trademark No. 1,577,711 of the wordmark "Ancestry." ("Ancestry" Trademark Reg. No. 1,577,711, attached as Exhibit 10.)

71.     23andMe disputes Defendants' allegation.  Defendants do not have protectable rights in the term "Ancestry" and even if Defendants have such rights, 23andMe's use of the word "Ancestry" does not infringe at least because 23andMe's use is: (a) a non-trademark use that does not deceive the public, (b) descriptive and protected under the fair use doctrine, and/or (c) unlikely to cause confusion.

72.     This is a declaratory judgment cause of action under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq*., the Lanham Act and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual and justiciable controversy has arisen and presently exists between the parties with respect to the "Ancestry" trademark in as much as Ancestry Operations has contended that certain uses of "Ancestry" by 23andMe could cause confusion and constitute

McDermott Will & Emery LLP
ATTORNEYS AT LAW
MENLO PARK

**COMPLAINT**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

trademark infringement, and 23andMe does not believe so and/or the term "Ancestry" is not protectable.

73.     Defendants do not have protectable ownership right to "Ancestry" at least because 23andMe has priority of usage of the mark as to the DNA testing market.  On information and belief, when defendant Ancestry Operations registered the mark, the mark was to market genealogical periodicals and genealogy websites, not to DNA testing services.  Defendants admit that back then when it applied for the "Ancestry" trademark, Defendants were not selling under the "Ancestry" mark anything related to DNA testing.  *Ancestry.com Operations, Inc., et al. v. DNA Diagnostics Center, Inc.,* No: 15-CV-00737 SJD, ECF No. 60 at p. 6, n.3 (D. Ohio, Apr. 25, 2016) (attached as Exhibit 11).

74.     It was only after 23andMe's success in the DNA testing market for ancestry and health services that Defendants began to offer their DNA tests.  Thus, 23andMe's use of "Ancestry" in connection with selling its DNA testing services predates Defendants' use of the mark in connection with Defendants' DNA testing service.

75.     Specifically, Defendants have contended that at least 23andMe's use of the phrase "Ancestry Service," "Health + Ancestry Service," or use of the word "Ancestry" under "Your information" or "Find out what your DNA says about your health, traits and ancestry," somehow uses its "Ancestry" trademark.

76.     The use of word "Ancestry" in these formats is not as a non-trademark. For example, the word "Ancestry" is used in the context of, and proximate to, a 23andMe source identifier and therefore would not deceive the public as to the source of the product or service.

77.     The word "Ancestry" as used in these formats generically describes the characteristics of the service provided by 23andMe, *i.e.*, determining ancestry, and constitutes fair use.

78.     23andMe's use of the word "Ancestry" in these formats is unlikely to result in confusion.  Among other things, the term is unprotectable for genetic testing to determine ancestry.  On information and belief, several companies, including DNA Diagnostics Center, Inc. have been using and continue to use the word "Ancestry."

79.     23andMe seeks a declaratory judgment from this Court that its current use of "Ancestry" in its products and services does not constitute trademark infringement under 15 U.S.C. § 1051 *et seq.*

**SIXTH CAUSE OF ACTION**
**(Declaratory Judgment of Invalidity of a Trademark)**

80.     23andMe incorporates paragraphs 1 through 38 and 46-79 of this Complaint as if set forth fully herein.

81.     Defendants also have no protectable ownership interest in the mark "Ancestry" at least because "Ancestry" is and has become generic for genetic testing for ancestry information and genealogical research services.  On information and belief, several companies including Defendants' competitors have used the word "Ancestry" for several years.

82.     23andMe seeks a declaratory judgment from this Court that there is no protectable interest in the wordmark "Ancestry,' and the U.S. Trademark Registration 1,577,711 for "Ancestry" is invalid and should be cancelled, in whole or in part, pursuant to 15 U.S.C. §§ 1064(3) and 1119.

**PRAYER FOR RELIEF**

WHEREFORE, 23andMe prays for judgment against Defendants, and respectfully requests the following relief:

1.     A judgment that the '554 Patent has been infringed by Defendants;

2.     A judgment for a permanent injunction enjoining Defendants, their officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them from further infringement of the '554 Patent;

3.     A preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them from making misleading promotions, advertisements or misrepresentations about Defendants' tests and services, including its features, characteristics and price;

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

4.      A preliminary and permanent injunction requiring Defendants to issue a statement on the Internet, and through the same other channels over which Defendants have disseminated its misleading statements, correcting their prior representations and comparisons;

5.      Disgorgement of profits by Defendants earned as a result of their deceptive, misleading and unfair business practices and advertisements;

6.      A declaratory judgment that 23andMe does not infringe Defendants' "Ancestry" trademark;

7.      A declaration that the mark "Ancestry" is generic and Defendants have no protectable ownership interest in the mark;

8.      A cancellation of U.S. Trademark Registration No. 1,577,711 of the wordmark "Ancestry;"

9.      An award of damages or other monetary relief, including but not limited to, costs and pre-and post-judgment interest, to 23andMe;

10.     A declaration that Defendants' infringement is willful and deliberate and an increase to the award of damages of three times the amount found or assessed by the Court, pursuant to 35 U.S.C. § 284; and,

11.     Such other and further relief as the Court deems just and appropriate, including but not limited to, a determination that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award of attorneys' fees and costs to 23andMe in this action.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

Dated:      May 11, 2018            By:     _____

William G. Gaede, III

*Attorneys for 23andMe, Inc.*

DM_US 91354986-7.094896.0200

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a jury trial on all issues triable thereby.

MCDERMOTT WILL & EMERY LLP

Dated: _____ May 11, 2018 _____     By: _____

William G. Gaede, III

*Attorneys for 23andMe, Inc.*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

DM_US 91354986-7.094896.0200

- 21 -

**COMPLAINT**