MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID C. MARCUS (CA SBN 158704)
david.marcus@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

BRITTANY BLUEITT AMADI (*pro hac vice*)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants*
*Ancestry.com DNA, LLC, Ancestry.com*
*Operations Inc., and Ancestry.com LLC*

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| 23ANDME, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANCESTRY.COM DNA, LLC,<br>ANCESTRY.COM OPERATIONS INC., and<br>ANCESTRY.COM LLC,<br><br>Defendants. | Case No. 3:18-cv-02791-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: August 16, 2018<br><br>Time: 1:30 p.m.<br><br>Place: Courtroom 5, 17th Floor<br><br>Judge: Hon. Edward M. Chen |

1

## TABLE OF CONTENTS

2

3    I.     INTRODUCTION ........................................................................................... 2

4    II.    FACTUAL BACKGROUND ......................................................................... 2

5          A.    The Parties ....................................................................................... 2

6          B.    Overview Of The '554 Patent And Its Prosecution ........................ 3

7          C.    ███████████████████████ .............................................................. 6

8

9    III.   ARGUMENT.................................................................................................. 7

10         A.    23andMe's Patent Infringement Claim (Count I) Should Be
                 Dismissed With Prejudice Because The '554 Patent Is Invalid
11               Under 35 U.S.C. § 101................................................................... 8

12               1.    The Asserted Claims Fail *Mayo/Alice* Step One Because
                       They Are Directed To Both An Abstract Idea And A
13                     Law Of Nature. ................................................................. 9

14               2.    The Asserted Claims Lack Any "Inventive Concept" As
                       Required Under *Mayo/Alice* Step Two................................ 12

15               3.    The '554 Patent Also Fails The Machine-Or-
                       Transformation Test. ........................................................ 14

16               4.    The '554 Patent Preempts The Practical Use Of Well-
17                     Established Genealogical Research Techniques. ............................ 14

18         B.    23andMe's Claims for Alleged Misleading Advertisement
                 (Counts II, III, and IV) Should Be Dismissed For Failure To
19               Satisfy Rule 9(b). ........................................................................ 15

20         C.    23andMe's Misleading Advertisement Claims Under California
                 State Law (Counts III and IV) Should Be Dismissed With
21               Prejudice...................................................................................... 18

22               1.    23andMe Lacks Standing Under The UCL And FAL. ..................... 18

23               2.    The Relief That 23andMe Seeks Is Not Recoverable. ..................... 20

24         D.    23andMe's Trademark Declaratory Judgment Claims (Counts V
                 and VI) Should Be Dismissed For Lack Of Subject Matter
25               Jurisdiction. ................................................................................. 21

26               1.    ███████████████████████ ................................. 22
27

28

2.    Even If This Court Has Jurisdiction, It Should Exercise Its Broad Discretion Not To Hear 23andMe's Trademark Claims. ............................................................................................ 24

IV.    CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A White & Yellow Cab, Inc. v. Uber Techs., Inc.*, No. 15-CV-05163, 2017 WL 1208384 (N.D. Cal. Mar. 31, 2017)................................................................19, 20, 21

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ......................7

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004)...............................................8

*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ...........................................5, 8, 9, 12

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)...............................................24

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)...............................................22

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015) ......................8, 9, 12, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................14

*Bilski v. Kappos*, 561 U.S. 593 (2010) ...............................................4, 14

*Binder v. Aetna Life Ins. Co.*, 89 Cal. Rptr. 2d 540 (Cal. Ct. App. 1999)...........................................23

*Bookham, Inc. v. Unaxis Balzers AG*, No. 06-CV-0885, 2006 WL 2734292 (N.D. Cal. Sept. 25, 2006)................................................................24, 25

*Brosnan v. Tradeline Sols., Inc.*, No. 08-CV-0694, 2009 WL 1604572 (N.D. Cal. June 5, 2009) ................................................................15, 16, 17

*Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393 (9th Cir. 1982) ......................22

*Cleveland Clinic Found. v. True Health Diagnostics, LLC*, 859 F.3d 1352 (Fed. Cir. 2017) ................................................................13

*Digitech Image Techs. v. Elecs. For Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014)...................11, 12

*Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ......................9

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996)...............................................25

*Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-CV-06393, 2018 WL 659105 (N.D. Cal. Feb. 1, 2018) ................................................................19, 20

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016) ......................7, 11, 12

*Gottschalk v. Benson*, 409 U.S. 63 (1972)...............................................8

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14-CV-0437, 2016
WL 304764 (N.D. Cal. Jan. 26, 2016) ...........................................................15, 16

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14-CV-0437, 2016
WL 9083386 (N.D. Cal. June 1, 2016) ................................................... 16

*Iconfind, Inc. v. Google, Inc.*, No. 11–CV–0319, 2012 WL 158366 (E.D. Cal. Jan. 18,
2012) ........................................................................................... 8

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755
(Fed. Cir. 2014).............................................................. 11, 12, 13, 15

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)........................................ 19

*Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363 (Fed. Cir. 2015) .......... 12

*K&N Eng'g, Inc. v. Spectre Performance*, No. 09-CV-01900, 2010 WL 11468976
(C.D. Cal. Feb. 9, 2010).................................................................. 15

*K-Tech Telecomms. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Cir. 2013) .......... 14

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................... 15

*Korea Supply Co. v. Lockheed Martin Corp.*, 463 P.3d 937 (Cal. 2003).................... 21

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015) ........... 19, 20, 21, 22

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. 10-CV-02605, 2011
WL 5024281 (N.D. Cal. Oct. 13, 2011).............................................17, 18

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522 (9th Cir. 2008)...................... 25

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ......................................... 8

*Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700 (N.D. Cal. 2009) ................ 7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)............5, 6, 8, 11

*Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883 (7th Cir. 2000) ...................... 17

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)................................ 22

*Merced Cty. Sheriff's Employee's Assn. v. Cty. of Merced*, 233 Cal. Rptr. 519 (Cal. Ct.
App. 1987)................................................................................ 23

*Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 F. App'x 628 (9th Cir. 2018).................. 22

*Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, No. 14-CV-4280, 2016 WL
6963052 (C.D. Cal. Jan. 28, 2016), *aff'd*, 721 F. App'x 628 (9th Cir. 2018)........................ 24

*Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001 (N.D. Cal. 2009).................... 22

*O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................. 19

*OIP Techs., Inc. v. Amazon.com, Inc.*, No. 12-CV-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) (Chen, J.) ............................................................................................... 7

*Ouiby Inc. v. Posey*, No. 17-CV-03847, 2018 WL 732493 (N.D. Cal. Feb. 6, 2018) (Chen, J.) ................................................................................................................ 15, 20

*Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570 (Fed. Cir. 2009) .................................. 22

*PerkinElmer, Inc. v. Intema Ltd.*, 496 F. App'x (Fed. Cir. 2012) ........................................ 11

*Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111 (1962) ............................................. 24

*RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) .................................... 8

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ...................................................... 22

*Roche Molecular Sys., Inc. v. Cephid*, No. 14-CV-03228, 2017 WL 6311568 (N.D. Cal. Jan. 17, 2017) ............................................................................................... 13

*Smart Sys. Innovations v. Chicago Transit Auth.*, 873 F.3d 1364 (Fed. Cir. 2017)......................... 9, 14

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016)........................................ 12

*Takeda Pharm. Co. v. Mylan Inc.*, 62 F. Supp. 3d 1115 (N.D. Cal. 2014) ........................................ 25

*Tomek v. Apple Inc.*, 636 F. App'x 712 (9th Cir. 2016) ...................................................... 15

*U.S. Legal Support, Inc. v. Hofioni*, No. 13-CV-01770, 2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ........................................................................................................... 20

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)........................................ 9, 14

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................... 15, 18

*Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018) ................ 7, 12

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ................................................................ 25

*Wishnev v. Nw. Mutual Life Ins. Co.*, 162 F. Supp. 3d 930 (N.D. Cal. 2016) (Chen, J.) ..................... 8

*ZL Techs., Inc. v. Gartner, Inc.*, No. 09-CV-02393, 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009) ............................................................................................................ 19

## STATUTES

15 U.S.C. § 1119 ...................................................................................................................... 24

35 U.S.C. § 101 ................................................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................................... 1

Cal. Bus. & Prof. Code § 17500, *et seq.* ........................................................................... 1

Cal. Civ. Code § 1550 ........................................................................................................ 23

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................. 2, 15, 16, 18

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 7

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 16, 2018, at 1:30 p.m., or a date to be set by the Court, before the Honorable Edward M. Chen, defendants Ancestry.com DNA, LLC, Ancestry.com Operations Inc., and Ancestry.com LLC (collectively, "Ancestry") will and hereby do move the Court to dismiss the Complaint of Plaintiff 23andMe, Inc. ("23andMe") (Dkt. No. 1).

Pursuant to Fed. R. Civ. P. 12(b)(6), Ancestry requests that this Court dismiss, with prejudice, 23andMe's claims for (1) patent infringement (Count I), (2) misleading representations in violation of the Lanham Act (Count II), (3) misleading advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.* ("the FAL") (Count III), and (4) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* ("the UCL") (Count IV).  Pursuant to Fed. R. Civ. P. 12(b)(1), Ancestry requests that the Court dismiss, with prejudice, 23andMe's claims for a declaratory judgment of no trademark infringement (Count V) and invalidity of a trademark (Count VI).

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Declarations of Mark D. Selwyn and Pilan Chenhansa, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.    **INTRODUCTION**

23andMe's six-count complaint is both legally flawed and factually deficient.  Each count of 23andMe's complaint should be dismissed.

***First***, 23andMe's asserted patent recites nothing more than the abstract and non-inventive steps of collecting DNA from two people, comparing that DNA, and determining a relationship using a naturally-occurring phenomenon.  Courts have routinely found similar claims to be patent-ineligible under 35 U.S.C. § 101.  The claims recite an abstract process, accomplished using general purpose computer components, to determine a relationship existing in nature.  The asserted claims do not survive the *Mayo/Alice* test, and should be ruled invalid.

***Second***, 23andMe fails to plead its advertisement claims with the specificity that Fed. R. Civ. P. 9(b) requires.  23andMe's identification of various statements on Ancestry's website, coupled with its conclusory assertions that they are "false" or "misleading," falls far short of the particularity requirement.  23andMe alleges no facts establishing ***how or why*** those statements are false or misleading.  Nor could it.  None of the unambiguous statements that 23andMe identifies—the veracity of which is left largely unchallenged by 23andMe—can support 23andMe's claims as a matter of law.

***Third***, even were 23andMe's advertising claims adequately pled (they are not), its misleading advertisement claims under California state law are legally deficient, as 23andMe—Ancestry's competitor, not its customer—cannot establish standing to assert those claims.  Not only does 23andMe fail to allege any facts establishing ***actual reliance*** on Ancestry's allegedly false and/or misleading statements, but the relief that 23andMe seeks is prohibited by well-established precedent.

***Finally***, this Court lacks jurisdiction to adjudicate 23andMe's trademark declaratory judgment claims, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  There is thus no live controversy.

II.   **FACTUAL BACKGROUND**

A.    **The Parties**

Ancestry is a "global leader in family history and consumer genomics."  Compl. Ex. 1.  In

1  addition to hosting the "world's largest online collection of family history records," *id.*, Ancestry

2  makes and sells DNA testing kits that allow individuals and families to better understand their

3  genealogy and biological relationships.  *Id.* at Ex. 6.  Over the last decade, ten million people have

4  had their DNA tested using one of Ancestry's kits.  *Id.* at Exs. 1, 11 & n.2.  Among Ancestry's

5  valuable intellectual property is the trademarked term "Ancestry," which was registered with the

6  Patent and Trademark Office in 1990.  Compl. Ex. 11.

7       23andMe is one of Ancestry's competitors.  Compl. ¶ 47.  23andMe offers products and

8  services that compete with Ancestry's products and services, including 23andMe's "Ancestry" and

9  "Health + Ancestry Services."  *Id.*

10      **B.**       **Overview Of The '554 Patent And Its Prosecution**

11       Issued in 2013, 23andMe's U.S. Patent No. 8,463,554 ("'554 patent") is entitled "Finding

12  Relatives in a Database."  Compl. Ex. 4.  The '554 patent does not purport to cover any new

13  technique for genetic testing, gene sequencing, or DNA analysis, or any new or improved computer

14  hardware, software, or database to perform any such techniques.   Rather, the '554 patent is directed

15  to a generic "relative finder system," *id.* at col. 2, ll. 62-66, implemented on generic computer

16  components (such as "one or more devices, circuits, and/or processing cores configured to process

17  data," *id*. at col. 2, ll. 13-14), utilizing a generic database, *id.* at col. 3, ll. 3-10.  The '554 patent uses

18  these generic computer components and this generic database to compare one person's DNA to a

19  second person's DNA to see if they share sufficient similarities to suggest a common ancestor at

20  some point in the past.  As shown in Figures 1 and 2 below and summarized in the Abstract, the '554

21  patent finds relatives in a database using three common-sense steps: (1) receiving DNA information

22  of two users, (2) comparing the DNA information of the two users to determine a predicted degree of

23  relationship, and (3) notifying at least the first user about the relative relationship to the other.  *Id.* at

24  1 (Abstract); Figs. 1, 2.

25

26

27

28



FIG. 1                                    FIG. 2

The '554 patent application was filed on December 22, 2009.  Compl. Ex. 4 at 1.  In a May 31, 2012 Office Action, the examiner rejected all claims because, *inter alia*, "the claimed invention is directed to non-statutory subject matter" under 35 U.S.C. § 101.  Ex. A, at 3.[1]  The examiner explained that under *Bilski v. Kappos*, 561 U.S. 593 (2010), the claims were not patentable because they "do not transform (either explicitly or inherently), any particular physical article such as nucleotides or biological samples; they merely operate on data, which are abstract mathematical constructs."  *Id.* at 4.  "Furthermore," the examiner noted, "the claims merely recite a general concept of analyzing DNA data, not a practical application of a well-defined algorithm."  *Id.*

The applicants did not challenge in any way the reasoning behind the examiner's conclusion that the applied-for claims recited non-patentable subject matter.  Instead, in response to the examiner's rejection, the applicants amended the claims to incorporate the use of generic computer components.  Specifically, on September 18, 2012, the applicants amended independent claim 1 to

---

[1]    Lettered exhibits referenced herein refer to the exhibits attached to the Declaration of Mark D. Selwyn, while numbered exhibits referenced herein refer to the exhibits attached to the Declaration of Pilan Chenhasa.

add a limitation that the method required the "using one or more computer processors" and claim 27 to add a limitation that the computer program must be embodied in a "tangible" computer readable storage medium. Ex. B, at 1, 4; *see also* Ex. C, at 1. Notwithstanding that these additional limitations failed to address the basis for the examiner's original rejection, the examiner inexplicably raised no further § 101 concerns.[2] On February 25, 2013, the examiner issued a Notice of Allowance. Ex. D, at 1. Following the Notice, the applicants added current system claims 28-33 and computer product claims 34-39 to "carry out the method" of current claims 3, 4, 6, 7, 17, and 20. Ex. E, at 6-9.[3]

23andMe filed four continuation and continuation-in-part applications claiming priority to the '554 patent, each including a description identical to the '554 patent: Nos. 12/774,546 (filed 5/5/10); 13/871,744 (filed 4/26/13); 15/264,493 (filed 9/13/16); and 15/664,619 (filed 7/31/17) ("the '546, '744, '493, and '619 applications," respectively). Like the '554 patent, each continuation claims the generic steps of collecting DNA from two individuals, comparing that DNA, and determining a relationship. 23andMe *abandoned* the '744 and '546 applications after Office Actions issued rejecting them on § 101 grounds (among others); the '493 application has also been rejected on § 101 grounds (among others), and the '619 application has not yet received any review by the examiner.

The basis for the § 101 rejections has been essentially the same. For example, in a February 1, 2017 Office Action, the examiner rejected the '546 application because the claims were directed to the abstract idea of "use of the computerized ancestry finding system to compare and match segments of the user genomic information to information in a database, and providing that information in a user

---

[2]   The examiner also did not discuss or even reference the Supreme Court's decision in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), which issued in March 2012. The Supreme Court's landmark decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), would not issue until two years later.

[3]   Apart from the § 101 rejection, in the May 31, 2012 Office Action, the examiner also rejected the pending claims as anticipated and/or obvious over prior art that disclosed comparison of inheritance-by-descent ("IBD") regions between individuals to determine relatedness. Ex. A at 7-11. Rather than dispute the teachings of the prior art relating to IBD regions, 23andMe overcame the rejections by simply arguing that the prior art failed to disclose the routine, post-solution step of "notifying at least the first user about the relative relationship with the second user." Ex. C at 4-5.

interface." Ex. J, at 4.  The examiner found that the claims were directed to "steps of collecting information and analyzing it, through mathematical algorithms, and presenting the results of those algorithms without significantly more." *Id.* at 5.  Citing post-*Alice* precedent, the examiner found that the claims "recite only generic computer elements in conventional use," and that the claims also include "a naturally occurring correlation" because they recite determining the relationship between two users based on the chromosomal segment, which is a law of nature under *Mayo*. *Id.* at 6, 8.

For the '744 application, the examiner rejected the claims under § 101 for similar reasons.  In a February 18, 2016 Office Action, the examiner found that the claims were directed to the abstract idea of "a mathematical relationship or formula correlating the collected data to data from the plurality of individuals and determining whether a user is likely to be related to one or more of the individuals in the plurality," and that the claimed steps involved "the manipulation of the data" and mere "generic computer systems executing unspecified actions." Ex. K at 4-5, 8.  The examiner also found that the claims include "a natural phenomenon or naturally occurring correlation." *Id.* at 6.

**C.**

On December 21, 2016, Ancestry's counsel contacted 23andMe's counsel to discuss 23andMe's use of the "Ancestry" trademark.  Declaration of Pilan Chenhansa in Support of Defendants' Motion to Dismiss ("Chenhansa Decl.") ¶ 2; Ex. 1.



Chenhansa Decl. ¶¶ 2-8.

Chenhansa Decl. ¶ 5; Exs. 3, 4.

Ex. 4 § 1

(emphasis added); Chenhansa Decl. ¶ 6.

Ex. 4 § 3(b); Chenhansa Decl. ¶¶ 5-6.



Ex. 4 § 6.

Ex. 5; Chenhansa Decl. ¶ 7.

. Ex. 6; Chenhansa Decl. ¶ 8.

Chenhansa Decl. ¶¶ 7-8.

. Chenhansa Decl. ¶¶ 8-9.

## III.   ARGUMENT

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss any claim in a complaint that either (1) does not plausibly set forth a factual basis upon which relief may be granted or (2) lacks a cognizable legal basis for relief.  *See Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 704 (N.D. Cal. 2009).  Thus, for example, an argument that a patent is invalid as a matter of law under 35 U.S.C. § 101 can be resolved on a Rule 12(b)(6) motion when "there are no factual allegations that, taken as true, prevent resolving the … question as a matter of law."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."  *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *see also, e.g., Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1386 (Fed. Cir. 2018) (affirming grant of 12(b)(6) dismissal on § 101 grounds); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. 12-CV-1233, 2012 WL 3985118, at *1 (N.D. Cal. Sept. 11, 2012) (Chen, J.) (same).

While courts must accept the factual allegations of a complaint as true, they need not accept as true legal conclusions or conclusory allegations that lack a plausible factual basis in the complaint.  *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  Courts may consider material outside the four corners of the complaint in deciding a 12(b)(6) motion if that material is "attached to or

incorporated by reference into the complaint." *Wishnev v. Nw. Mutual Life Ins. Co.*, 162 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (Chen, J.). Courts may also consider the prosecution history of a patent when ruling on a challenge to the sufficiency of the pleadings under § 101. *See, e.g., Iconfind, Inc. v. Google, Inc.*, No. 11–CV–0319, 2012 WL 158366, at *1 (E.D. Cal. Jan. 18, 2012).

Courts may grant a motion to dismiss with prejudice if amendment would be futile because the defects cannot be cured. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### A. 23andMe's Patent Infringement Claim (Count I) Should Be Dismissed With Prejudice Because The '554 Patent Is Invalid Under 35 U.S.C. § 101.

The Supreme Court has long held that "[p]henomena of nature, … mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *see also Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 70 (2012) (collecting cases); *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (same).

The Federal Circuit has interpreted *Mayo* and its progeny as creating a two-pronged test for determining patent eligibility under 35 U.S.C. § 101. First, the court "determine[s] whether the claims at issue are directed to patent ineligible concept." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1375 (Fed. Cir. 2015). If the answer to that question is yes, then the court searches for an "inventive concept"—that is, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* For this second step, the court examines the "elements of each claim both individually and 'as an ordered combination.'" *Id.* A process that merely "involve[s] well-understood, routine, conventional activity previously engaged in by researchers in the field" does not survive step two. *Mayo*, 566 U.S. at 73. "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Where a patent claim runs a substantial risk of preempting practical uses of the basic building blocks of technology, it "signal[s]" a § 101 problem. *Ariosa*, 788 F.3d at 1379. However, "the absence of complete preemption does not demonstrate patent eligibility." *Id.*

Another "useful clue" for the second step of the *Mayo/Alice* framework is whether the

1    asserted claim is "tied to a particular machine or apparatus." *Smart Sys. Innovations v. Chicago*

2    *Transit Auth.*, 873 F.3d 1364, 1375 (Fed. Cir. 2017).  "In other words, the subject patent must

3    disclose the use of an apparatus specific to the claimed invention." *Id.*  Claims that merely "disclose

4    the use of generic computer components and machinery" do not satisfy this machine-or-

5    transformation test.  *Id.*; *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014)

6    (a claim fails the machine-or-transformation test if it is "not tied to any particular novel machine or

7    apparatus, only a general purpose computer").

8            Thus, for example, the Supreme Court has explained that "if a patent's recitation of a

9    computer amounts to a mere instruction to 'implement' an abstract idea 'on … a computer,' … that

10   addition cannot impart patent eligibility." *Alice*, 134 S. Ct. at 2358.  By the same logic, courts have

11   treated "analyzing information by steps people go through in their minds, or by mathematical

12   algorithms, without more, as essentially mental processes within the abstract-idea category." *Electric

13   Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

14   ### 1.    The Asserted Claims Fail *Mayo/Alice* Step One Because They Are Directed To Both An Abstract Idea And A Law Of Nature.

15

16           The '554 patent's three independent claims (1, 26, and 27), from which all other asserted

17   claims depend, recite a method, system, and computer program to "determine relative relationship by

18   looking at recombinable DNA sequence information  … of two individuals stored in a database …

19   based in part on a comparison of the recombinable DNA sequence information … and notifying at

20   least one of the individuals about the relative relationship."  Compl. ¶ 18; *see also id.* ¶ 21.  In other

21   words, the essence of the claimed invention is the abstract idea of determining a relative relationship

22   by comparing similarities between DNA sequences.  The independent claims do not recite any

23   specific steps for ***how*** DNA sequence information is analyzed to derive predictions on relatedness.

24           The asserted dependent claims (5, 7-8, 12-14, 17, 22, 31-32, and 37-38) are equally abstract in

25   that they are also directed to well-established ways of predicting degrees of relative relationship

26   between two individuals using long-known and inherent genetic characteristics.[4]  Specifically:

27   ───────────────────
     [4]    Indeed, as *WIRED* magazine recently noted, the "theory behind" the '554 patent "dates back

28   to the 1940s, to a French mathematician named Gustave Malécot."  Molteni, *23andMe is Suing*
     [Footnote continued on next page]

- Claim 5 covers "[t]he method of claim 1, wherein the predicted degree of relative relationship indicates that the first user and second user share a common ancestor at least three generations out or beyond."

- Claim 7 covers "[t]he method of claim 1," claim 31 covers "the system of claim 26," and claim 37 covers the "computer program product of claim 27," wherein the connection between the two users includes identifying "one or more Inheritance by Descent (IBD) regions"—*i.e.*, the portions of both users DNA sequences that arose from the same ancestor— to determine the "predicted degree of relationship."

- Claim 8 covers "[t]he method of claim 1, wherein determining a predicted degree of relationship between the first user and the second user includes using a distribution pattern that indicates a distribution of amounts of DNA shared by individuals and corresponding relative relationships."

- Claim 12 covers "[t]he method of claim 7, wherein identifying one or more IBD regions includes" (1) "identifying consecutive opposite-homozygous calls in a SNP sequence of the first user and in a SNP of the second user" where the users have "opposite-homozygous calls at a given SNP location where the first and the second user do not share an allele," and (2) "determining, based at least in part on a distance between the consecutive opposite-homozygous calls, whether a region between the opposite-homozygous calls is an IBD region."

- Claim 13 covers "[t]he method of claim 12, wherein the distance is a genetic distance."

- Claim 14 covers "[t]he method of claim 10 [i.e., "[t]he method of claim 1, wherein the DNA sequence information includes [SNP] information"], wherein the SNP sequence information includes phased genotype information."

- Claim 17 covers "[t]he method of clam 1," claim 32 covers "[t]he system of claim 26," and

---

[Footnote continued from previous page]
*Ancestry Over Some Pretty Ancient IP*, May 30, 2018, https://www.wired.com/story/23andme-sues-ancestry/.

1    claim 38 covers "[t]he computer program product of claim 27," "wherein the relative

2    relationship is one of a range of possible relative relationships" between the two users and the

3    notification sends an indication of the range of possible relationships between two users.

4        The Federal Circuit has found similar ideas abstract.  For example, in *In re BRCA1- &*

5    *BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 763 (Fed. Cir. 2014), the Federal

6    Circuit ruled that claims that recite "an abstract mental process of 'comparing' and 'analyzing' two

7    gene sequences" are "directed to [a] patent-ineligible abstract idea."  "[A]llowing a patent on the

8    comparison step could impede a great swath of research relating to the BRCA genes, and it is

9    antithetical to the patent laws to allow these basic building blocks of scientific research to be

10   monopolized."  *Id.* at 764.  Likewise, in *PerkinElmer, Inc. v. Intema Ltd.*, 496 F. App'x, 65, 70 (Fed.

11   Cir. 2012) (nonprecedential), the court concluded that patent claims covering "analytical methods to

12   determine the risk of fetal Down's syndrome" were directed to "abstract mental processes" because

13   the claims simply "compar[ed] data … to known statistical information."  Indeed, the Federal Circuit

14   has broadly recognized that any "process of organizing information through mathematical

15   correlations" that "is not tied to a specific structure or machine" is abstract.  *Digitech Image Techs. v.*

16   *Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).

17       The claims cover unpatentable subject matter for the additional reason that they are directed

18   to a law of nature.  A patent that "simply describes" a "relation[ship] [that] itself exists in principle

19   apart from any human action … sets forth a natural law."  *Mayo*, 556 U.S. at 77.  Here, the claims

20   describe just such a relationship between DNA samples—one existing from the beginning of

21   humankind.  Indeed, every claim purports to cover a "relationship" stemming from similarity in DNA

22   sequences among "people who share a common ancestor."  *See* Compl. Ex. 4 at col. 10, l. 27 to col.

23   14, l. 54.  Similarly, in *Genetic Technologies*, the Federal Circuit found a claim directed to a

24   relationship between certain types of DNA sequences to be a law of nature.  818 F.3d at 1374

25   ("Claim 1 is directed to the relationship between non-coding and coding sequences in linkage

26   disequilibrium and the tendency of such non-coding DNA sequences to be representative of the

27   linked coding sequences—a law of nature.").  The Federal Circuit therefore rejected the attempt to

28   patent a "correlation" that is "a consequence of the naturally occurring linkages in the DNA

sequence." *Id.* at 1375; *see also Ariosa*, 788 F.3d at 1376 (claim involving prenatal analysis of cell-free fetal DNA in maternal blood is directed to "matter that is naturally occurring").

> **2.    The Asserted Claims Lack Any "Inventive Concept" As Required Under** *Mayo/Alice* **Step Two.**

Whether viewed as directed to an abstract idea or a law of nature, the asserted claims do not survive *Mayo/Alice* step two because the claim elements, when considered individually or as an ordered combination, do not amount to "significantly more" than the ineligible concept itself. *Alice*, 134 S. Ct. at 2354-2355.  Patent claims that simply "recite different variations of the same abstract idea being performed with … generic computer components" cannot surmount step two. *Voter Verified Inc. v. Elections Sys. & Software*, 887 F.3d 1376, 1386 (Fed. Cir. 2018); *see also Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible.").  Here, each claim merely describes the basic notion of comparing the similarities and differences between DNA strands, which could be replicated solely by "using a pencil and paper," and thus cannot reasonably be said to add anything inventive beyond the abstract idea of comparing data. *Intellectual Ventures*, 792 F.3d at 1368; *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1152 (Fed. Cir. 2016) (claims failed step two where they introduced no "technical advance or improvement"); *Digitech Image Techs.*, 758 F.3d at 1351 ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

The *BRCA* case is instructive.  There, the patent-in-suit claimed a method for screening for breast and ovarian cancer by comparing the genetic profile of a test subject with the genetic sequences of the kinds of mutations linked to cancer.  774 F.3d at 757, 763.  The Federal Circuit concluded that the claims were invalid under *Mayo*, explaining that an independent claim that "claimed an abstract mental process of comparing and analyzing two gene sequences" was patent ineligible as an abstract idea.  *Id.* at 763.  The court also concluded that dependent claims with additional detail about "the way in which the sequences are compared" lacked a sufficient inventive concept to "take the claim[s] into the realm of patent-eligibility" because claims that "compare gene

1  sequences using routine, ordinary techniques … that a scientist would have thought of when

2  instructed to compare two gene sequences" do not survive the *Mayo/Alice* test. *Id.* at 764.

3        The asserted claims also do not survive step two when conceived of as directed to a law of

4  nature.  Nothing in the '554 patent (or any allegation within the Complaint) suggests that the named

5  inventors discovered any new or improved techniques of genetic testing, gene sequencing, DNA

6  analysis, or anything similar.  As the patent examiner noted, the '554 patent does not claim any new

7  algorithm, but simply the general idea of analyzing DNA data.  *See supra* pp. 4-6.

8        When analyzing an analogous patent that claimed a method for correlating the risk of heart

9  problems to the presence of a certain enzyme in a human body, the Federal Circuit made clear that

10  "transforming claims that are directed to a law of nature requires more than simply stating the law of

11  nature while adding the words 'apply it.'"  *Cleveland Clinic Found. v. True Health Diagnostics, LLC*,

12  859 F.3d 1352, 1362 (Fed. Cir. 2017).  In other words, patent claims cannot survive *Mayo/Alice* step

13  two when they do not purport to "derive new statistical methods" but merely tell those "interested in

14  the subject about the correlations that the researchers discovered."  *Id.*  Judge Laporte recently

15  reached the same result when analyzing a patent that claimed a method for detecting the bacteria that

16  causes tuberculosis based on the correlation between the presence of certain DNA nucleotides and the

17  presence of the bacteria.  *See Roche Molecular Sys., Inc. v. Cephid*, No. 14-CV-03228, 2017 WL

18  6311568, at * 1, *3, *19 (N.D. Cal. Jan. 17, 2017).  Even if the invention "when viewed as a whole[]

19  could be seen as revolutionary," the mere "identification of [a] specific naturally-occurring"

20  correlation coupled with the use of well-known testing techniques standing alone "does not confer

21  patentability when there is no new, inventive concept added."  *Id.* at *19.[5]

22

23    [5]    Recognizing the weakness of its position, 23andMe attempts to preemptively rebut a § 101
challenge by offering the conclusory allegation that "[t]he claims … are not directed to laws of

24  nature, natural phenomenon, or abstract ideas" and "involve more than the performance of well-
understood, routine and conventional activities previously known in the industry."  Compl. ¶¶ 21-22.

25  But 23andMe provides no facts to support these allegations, and conclusory statements framed as
legal conclusions are entitled to no deference.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009); *K-*

26  *Tech Telecomms. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) ("Only pleaded
facts, as opposed to legal conclusions, are entitled to assumption of the truth.").  Thus, 23andMe's

27  bare assertions cannot insulate the '554 patent from a § 101 challenge.

28

### 3.       The '554 Patent Also Fails The Machine-Or-Transformation Test.

Another indication that the asserted claims are directed to unpatentable subject matter is that they fail the "machine-or-transformation" test. *See Bilski*, 561 U.S. at 600, 604.  A "useful and important clue" in determining if a patent claims eligible subject matter is whether the process claimed "is tied to a particular machine or apparatus" or "transforms a particular article into a different state or thing." *Id.* at 600, 604.  Here, the asserted claims do not involve any particular computer components, software, or database.  To the contrary, the '554 patent repeatedly emphasizes that the claimed method, system, and computer program does not involve any particular machine or apparatus, but rather can be implemented with generic hardware, software, and databases. *See, e.g.*, Compl. Ex. 4 at col. 2, ll. 63-66; *id.* at col. 2, ll. 7-15; *see also supra* p. 3.  And the claims recite nothing but utterly generic computer language. *See, e.g., id.* col. 10, l. 39 (claim 1, "one or more computer processors"); col. 13, ll. 10-12 (claim 26, "a memory coupled to at least some of the one or more processors, configured to provide the processors with instructions"); col. 13, ll. 15-17 (claim 27, "the computer program product being embodied in a tangible computer readable storage medium and comprising computer instructions").  These generic references to "computer components and machinery" do not come close to satisfying the machine-or-transformation test. *See Smart Sys. Innovations*, 873 F.3d at 1375; *accord Ultramercial*, 772 F.3d at 716-717 (claims failed the test where "not tied to any particular novel machine or apparatus, only a general purpose computer").[6]

### 4.       The '554 Patent Preempts The Practical Use Of Well-Established Genealogical Research Techniques.

Finally, whether the patent-in-suit preempts future innovation is relevant to determining invalidity.  Here, 23andMe appears to read the asserted claims in a way that would preempt the very notion of comparing two DNA samples to determine their similarities and, in turn, the likelihood that the samples' sources are related.  Here, as in *BRCA*, "[a]llowing a patent" based on a comparison between two genetic sequences "could impede a great swath of research" in a manner "antithetical to

---

[6]       For this reason, the amendments that the applicant made to the '554 patent to respond to the examiner's concerns do not cure the patent's § 101 problem. *See supra* pp. 4-5.

the patent laws." 774 F.3d at 764.  Patent claims cannot permissibly "prevent the use of [such] basic

building blocks of technology." *Ariosa*, 788 F.3d at 1379.

> **B.     23andMe's Claims for Alleged Misleading Advertisement (Counts II, III, and IV) Should Be Dismissed For Failure To Satisfy Rule 9(b).**

"It is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud,

which must meet Rule 9(b)'s particularity requirement." *Brosnan v. Tradeline Sols., Inc.*, No. 08-

CV-0694, 2009 WL 1604572, at *4 (N.D. Cal. June 5, 2009) (dismissing Lanham Act, UCL, and

FAL claims for failure to comply with Rule 9(b)).  Accordingly, Lanham Act, UCL, and FAL claims

"based on allegations of misleading statements or misrepresentations regarding the nature of products

or services" must satisfy Rule 9(b)'s requirement that the plaintiff "state with particularity the

circumstances constituting fraud or mistake." *K&N Eng'g, Inc. v. Spectre Performance*, No. 09-CV-

01900, 2010 WL 11468976, at *5 (C.D. Cal. Feb. 9, 2010); *see also Heartland Payment Sys., Inc. v.

Mercury Payment Sys., LLC*, No. 14-CV-0437, 2016 WL 304764, at *3 (N.D. Cal. Jan. 26, 2016)

(dismissing Lanham Act, UCL, and FAL claims); *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th

Cir. 2016) ("Regardless of the title given to a particular claim, allegations grounded in fraud are

subject to Rule 9(b)'s pleading requirements."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

Cir. 2009) ("[A] plaintiff may … allege that the defendant engaged in fraudulent conduct [under the

UCL]. … In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the

pleading ... must satisfy the particularity requirement of Rule 9(b)."); *Ouiby Inc. v. Posey*, No. 17-

CV-03847, 2018 WL 732493, at *2, 5 (N.D. Cal. Feb. 6, 2018) (Chen, J.) (dismissing UCL claim,

explaining that "[Rule] 9(b) is … implicated").  To meet that requirement, "[a]verments of fraud must

be accompanied by 'the who, what, when, where, and how' of the misconduct charged.  '[A] plaintiff

must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set

forth what is false or misleading about a statement, and ***why it is false***.'"  *Vess v. Ciba-Geigy Corp.

USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (second emphasis added) (citations omitted); *see also

Brosnan*, 2009 WL 1604572, at *4.

23andMe's allegations fall far short of satisfying these requirements.  Although 23andMe

identifies several statements that it contends are "false" or "misleading," its allegations are so devoid

1    of specificity that they fail to provide basic notice of **what** was false or misleading about the

2    statements and **why** they were false or misleading.  23andMe's Lanham Act, UCL, and FAL claims—

3    which are all based on the same statements—lack the required specificity and must be dismissed.

4         **First**, 23andMe vaguely contends that "[p]reviously, Defendants made the false statement

5    they test[] '5x more regions than **other DNA tests**.'"  Compl. ¶ 51 (emphasis added).  But 23andMe

6    fails to assert **any** facts explaining **why or how** that statement—which generally refers to "other DNA

7    tests" (not to 23andMe or its products)—was false when made.  Courts have consistently rejected

8    such vague and conclusory claims as failing to satisfy Rule 9(b).  For example, in *Heartland*

9    *Payment*, 2016 WL 304764 at *1-2, a payment processing company ("Mercury") asserted violations

10   of the Lanham Act, UCL, and FAL against a competitor based on allegedly false or misleading

11   statements on the competitor's website that it offered "all" customers "interchange-plus pricing."

12   Mercury alleged that the statement was false because "that offer extends only to customers who

13   process $50,000 or more yearly."  *Id.* at *1.  Agreeing with the competitor that Mercury failed to

14   "plead any explanation of how [competitor's] plan offered to merchants who process less than

15   $50,000 per year is inconsistent with interchange-plus pricing," Judge Wilken dismissed the claims

16   which pled "no facts to support the allegation that … customers that process less than $50,000 a year

17   are not receiving 'interchange-plus' pricing."  *Id.* at *4; *see Heartland Payment Sys., Inc. v. Mercury*

18   *Payment Sys., LLC*, No. 14-CV-0437, 2016 WL 9083386, at *5 (N.D. Cal. June 1, 2016) (dismissing

19   same claims in amended complaint without leave to amend where plaintiff again "fail[ed] to state

20   facts sufficient to support its allegation that [competitor's] … advertisement is false or misleading").

21        Similarly, here, 23andMe alleges no facts establishing **how or why** the statement that

22   Ancestry tests "5x more regions than other DNA tests" is false.  Beyond pointing to a single website

23   "snapshot," 23andMe alleges no facts regarding when the allegedly false statement was first made.

24   *See* Compl. ¶ 51.  Nor does 23andMe plead facts establishing the number of "regions" tested by

25   Ancestry's DNA tests as compared to other DNA tests (including 23andMe's own products) during

26   the (unspecified) time period that the statement appeared.  At best, 23andMe baldly states—without

27   reference to any particular time period or underlying facts—that "Defendants … do not test 5X more

28   regions than 23andMe."  Compl. ¶ 49.  But 23andMe's conclusory allegation does not render

1   Ancestry's statement that it tests "5X more regions than *other DNA tests*"—which is not specific to

2   23andMe or its products—"false" as 23andMe claims.  *See, e.g.*, *Brosnan*, 2009 WL 1604572, at *5

3   (dismissing false advertising claims where complaint "fail[ed] to explain how the statements … are

4   false or misleading").  In short, 23andMe pleads *no facts* supporting its claim that Ancestry falsely

5   stated that it tests "5x more regions than other DNA tests."

6           *Second*, pointing to a separate snapshot of Ancestry's website that includes the language "5X

7   MORE REGIONS than other DNA tests*" with a footnote, 23andMe vaguely contends that

8   "[c]onsumers who glance at the headline are likely to be misled into believing that Defendants test[]

9   5X more regions than other DNA tests, including the 23andMe's Ancestry and Health + Ancestry

10   Services."  Compl. ¶ 50; *see also id.* ¶ 53.  But 23andMe's allegations include *no facts* explaining

11   why that statement is likely to mislead.  Indeed, the snapshot *expressly states* that Ancestry tests "5x

12   more regions than MyHeritage, Nat Geo Geno 2.0, and Family Tree DNA" and "2x more regions

13   than 23andMe."  Compl. ¶¶ 48-49.  *The veracity of that statement is left unchallenged by 23andMe.*

14           There is thus nothing misleading about Ancestry's statements, and 23andMe pleads no facts

15   suggesting otherwise.  Nor could it—"a statement [that] is purely factual and unambiguous," as here,

16   "*cannot be proven to be misleading*."  *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,

17   No. 10-CV-02605, 2011 WL 5024281, at *12 (N.D. Cal. Oct. 13, 2011); *see also Mead Johnson &*

18   *Co. v. Abbott Labs.*, 201 F.3d 883, 886 (7th Cir. 2000) ("[I]nterpreting 'misleading' to include factual

19   propositions that are susceptible to misunderstanding would make consumers as a whole worse off by

20   suppressing truthful statements ….  A 'misunderstood' statement is not the same as one designed to

21   mislead.").  Rather, "where a statement is alleged to be misleading only in that it is possible that

22   consumers could interpret it to mean something other than what it does, that statement is not

23   actionable under the Lanham Act" (and, by extension, the UCL and FAL).  *Language Line*, 2011 WL

24   5024281, at *12.  Because 23andMe does not challenge the veracity of this unambiguous statement, it

25   has not adequately pled a claim for false advertising under the Lanham Act, UCL, or FAL.

26           *Third*, 23andMe asserts that Ancestry includes a "misleading claim that their DNA test

27   provides '5X MORE DETAIL than other DNA tests.'"  Compl. ¶ 54.  But 23andMe once again fails

28   to support its allegation with factual detail, offering only the conclusory assertion that "[Ancestry]

do[es] not provide five times more detail on the ancestry services performed than in 23andMe's [services]." Compl. ¶ 55.  That allegation is plainly insufficient to satisfy the particularity requirement, as it lacks a single fact regarding the amount of detail provided by Ancestry, 23andMe, or any other DNA testing service, or any explanation of why that statement is misleading.  This is particularly true given that the "snapshot" on which 23andMe's claim rests contains the ***very same footnote*** specifying that Ancestry tests "5x more regions than MyHeritage, Nat Geo Geno 2.0, and Family Tree DNA" and "2x more regions than 23andMe."  Compl. ¶ 54.

***Finally***, 23andMe's allegation that Ancestry's "sale" of its $99 DNA test for "ONLY $79*" is "misleading" is completely devoid of factual support.  Compl. ¶ 58.  23andMe pleads no facts establishing ***why*** the statement was allegedly misleading to consumers, ***when*** the statement was made and for how long, or ***where*** the statement was made.  *See Vess*, 317 F.3d at 1106 (Rule 9(b) requires "'the who, what, when, where, and how' of the misconduct charged").  That is a far cry from satisfying the requirements of Rule 9(b).

As 23andMe fails to (and cannot) plead sufficient facts to support its Lanham Act, UCL, and FAL claims, those claims should be dismissed with prejudice.

### C.    23andMe's Misleading Advertisement Claims Under California State Law (Counts III and IV) Should Be Dismissed With Prejudice.

23andMe's UCL and FAL claims should separately be dismissed as a matter of law because 23andMe lacks standing and, even if it had standing, the remedies sought are not recoverable.

### 1.    23andMe Lacks Standing Under The UCL And FAL.

A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL [or FAL] action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *In re Tobacco II Cases*, 207 P.3d 20, 26 (Cal. 2009); *see also id.* at 29 n.8, 38-39.  "[R]eliance is proved by showing that the defendant's misrepresentation … was 'an immediate cause' of ***the plaintiff's*** injury-producing conduct," such that "in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *Id.* at 326 (emphasis added). Courts in this District have routinely held that a plaintiff asserting a cause of action under the UCL and FAL "must allege ***their own reliance*** on the alleged misrepresentations, rather than the reliance

of third parties." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015); *see also, e.g.*, *Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-CV-06393, 2018 WL 659105, at *13 (N.D. Cal. Feb. 1, 2018) ("[P]laintiff's … UCL [claim] fails because plaintiff has not alleged actual reliance …."); *id.* at *15 ("[T]he logic … which indicates the UCL plaintiffs … must allege their own reliance is applicable to claims brought under the FAL."); *A White & Yellow Cab, Inc. v. Uber Techs., Inc.*, No. 15-CV-05163, 2017 WL 1208384, at *9 (N.D. Cal. Mar. 31, 2017) ("[A] competitor plaintiff must be able to allege its own reliance on allegedly false misrepresentations to establish standing under the FAL."); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) ("UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under the UCL."); *ZL Techs., Inc. v. Gartner, Inc.*, No. 09-CV-02393, 2009 WL 3706821, at *11 (N.D. Cal. Nov. 4, 2009) ("[A] plaintiff that itself did not actually rely upon the alleged misrepresentations is [not] entitled to relief under [the UCL or FAL]").

23andMe fails to allege *any* reliance, let alone its *own reliance*, on the allegedly false and misleading statements on which it bases its UCL and FAL claims. 23andMe's complaint contains only the conclusory allegation that Ancestry's statements "are likely to affect purchasing decisions by members of the public" who "are likely to be deceived about Defendants' misrepresentations." Compl. ¶¶ 60, 65, 68. But those allegations say nothing about whether a single person *relied* on the statements. And even if those statements were sufficient to allege actual reliance, at best, they merely suggest (albeit in a conclusory manner) "that [Ancestry's] *customers* relied on the alleged misrepresentations." *O'Connor*, 58 F. Supp. 3d at 1003 (emphasis added). But "third-party reliance is insufficient to establish standing" under the UCL and FAL. *Id.*; *see Ouiby*, 2018 WL 732493, at *5 (UCL claim dismissed where plaintiff failed to "demonstrate[] that she can plausibly allege how she relied on misrepresentations made to third parties"). Because 23andMe fails to (and cannot) allege facts establishing *its own reliance* on the allegedly false and misleading statements, its UCL and FAL claims should be dismissed as a matter of law.[7]

---

[7]   That "one blogger" merely repeated a statement appearing on Ancestry's website also falls far short of pleading actual reliance. *See* Compl. ¶ 65.

*A White & Yellow Cab*, 2017 WL 1208384, is instructive.  There, a plaintiff taxi company alleged that competitor Uber misled customers through false and misleading statements that its "drivers were subject to more rigorous background checks" and it provided the "safest ride available." *Id.* at *3, *7.  But (as here) the plaintiff failed to "allege facts to show that it relied to its detriment on [Uber's] allegedly false advertising." *Id.* at *9.  Judge White found that the plaintiff's UCL and FAL claims could not stand, concluding that "a competitor plaintiff must be able to allege *its own reliance* on allegedly false misrepresentations to establish standing." *Id.*; *see also Equinox Hotel Mgmt.*, 2018 WL 659105, at *14-16 (dismissing UCL and FAL claims for failure to plead actual reliance); *L.A. Taxi Coop.*, 114 F. Supp. 3d at 866-867 ("[B]ecause Plaintiffs do not plead their own reliance on Uber's allegedly false advertising, they lack standing to seek relief under the UCL's fraud prong."); *U.S. Legal Support, Inc. v. Hofioni*, No. 13-CV-01770, 2013 WL 6844756, at *15 (E.D. Cal. Dec. 20, 2013) (non-customer UCL plaintiff "cannot demonstrate reliance on Defendants' fraudulent statements in order to establish standing under [the UCL]").  As in *A White & Yellow Cab*, 23andMe—Ancestry's competitor, not customer—cannot establish actual reliance on the allegedly false and misleading statements it identifies.  That is fatal to its UCL and FAL claims, which should be dismissed with prejudice.

## 2. The Relief That 23andMe Seeks Is Not Recoverable.

Even were this Court to allow 23andMe's UCL and FAL claims to proceed (though it should not), 23andMe's claims for "restitution and disgorgement of profits" under those statutes should nonetheless be dismissed.  Compl. ¶¶ 66, 69.  "It is well-established that damages cannot be recovered pursuant to a UCL claim.  A plaintiff bringing such a claim is limited to injunctive relief and *restitution*.  The same is true under the FAL." *A White & Yellow Cab*, 2017 WL 1208384, at *10 (citations omitted).  "[A]n order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had *an ownership interest in the property*.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 463 P.3d 937, 947 (Cal. 2003) (emphasis added).  Thus, "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.*  "Disgorgement," on the other hand, "is a broader remedy than restitution,"

1  as it "may compel a defendant to surrender all money obtained through an unfair business practice

2  even though not all is to be restored to the persons from whom it was obtained." *Id.* at 944.

3  Disgorgement is not recoverable under the UCL and FAL, as "[c]ompensation for a lost business

4  opportunity is a measure of damages and not restitution to the alleged victims." *See id.* at 948.

5     Here, 23andMe broadly seeks "an order of restitution and disgorgement of profits earned by

6  Defendants" as a remedy for Ancestry's alleged violation of the UCL and FAL.  Compl. ¶¶ 66, 69.

7  But 23andMe cannot show entitlement to restitution, as the complaint contains no facts alleging that

8  23andMe had an ownership interest in any profits earned by Ancestry.  And the disgorgement remedy

9  23andMe seeks is precisely the type of remedy that the courts have found to be unrecoverable.  *See,*

10  *e.g.*, *Korea Supply*, 29 Cal. 4th at 948 ("The nonrestitutionary disgorgement remedy sought by

11  plaintiff closely resembles a claim for damages, something that is not permitted under the UCL.").

12  As Judge Tygar explained in dismissing the plaintiff's claims for restitution and disgorgement in *L.A.*

13  *Taxi Cooperative*:

14     The problem for Plaintiffs is that the complaint, as written, seeks only 'restitution and

15     restitutionary disgorgement for all sums obtained in violation' of the California
      statutes; it does not allege an ownership interest in any of those profits or a

16     'confirmed' contractual relationship with any of [the defendant's] customers.
      Consequently, Plaintiffs seek 'exactly the type of nonrestitutionary disgorgement

17     precluded under *Korea Supply*.'

18  114 F. Supp. 3d at 867 (citations omitted); *see also A White & Yellow Cab*, 2017 WL 1208384, at

19  *11 ("[N]on-restitutionary disgorgement … is precluded under *Korea Supply*.").  As in *L.A. Taxi*

20  *Cooperative*, 23andMe's claims for restitution and disgorgement under the UCL and FAL should be

21  dismissed.

22     **D.**  **23andMe's Trademark Declaratory Judgment Claims (Counts V and VI) Should**
23        **Be Dismissed For Lack Of Subject Matter Jurisdiction.**

24     In assessing subject matter jurisdiction, "[a] district court may 'hear evidence regarding

25  jurisdiction' and 'resolv[e] factual disputes where necessary.'"  *Robinson v. United States*, 586 F.3d

26  683, 685 (9th Cir. 2009); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[I]f subject-

27  matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence

28  and resolve the dispute on her own.").  "No presumptive truthfulness attaches to plaintiff's

allegations" and "the party asserting subject matter jurisdiction has the burden of proving its existence.'" *Robinson*, 586 F.3d at 685; *see also Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570, 572 (Fed. Cir. 2009) ("[I]f a declaratory judgment defendant adequately challenges jurisdiction in fact, 'the allegations in the complaint are not controlling.'").

This Court lacks jurisdiction over 23andMe's declaratory judgment claims unless 23andMe can establish that "under ***all the circumstances***, … there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (emphasis added); *see also Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 F. App'x 628, 629 (9th Cir. 2018) (dismissing trademark declaratory judgment claims where there was no dispute of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). "Under Ninth Circuit trademark law, to satisfy the actual controversy requirement, the plaintiff must show 'real and reasonable apprehension' that it would be liable for infringement if it continued marketing its product." *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010-1011 (N.D. Cal. 2009) (quoting *Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)); *see also Merit Healthcare*, 721 F. App'x at 629 ("[A]ny such apprehension [of suit] was not reasonable on the facts alleged …."). Analysis of "all the circumstances" compels a finding that there is no live controversy concerning 23andMe's use of the "Ancestry" mark, requiring dismissal of 23andMe's declaratory judgment claims.

**1.** ████████████████████████████████████████████

23andMe contends that "[a]n actual and justiciable controversy has arisen and presently exists between the parties with respect to the 'Ancestry' trademark," identifying three 23andMe uses of the "Ancestry" mark that it claims give rise to a dispute between the parties:  (1) "Ancestry Service"; (2) "Health + Ancestry Service"; and (3) "Ancestry" under "Your information" and "Find out what your DNA says about your health, traits and ancestry."  Compl. ¶¶ 72, 75.  ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

*See* Chenhansa Decl. ¶ 6; Ex. 4 § 1 ████████████████

1

2 *id.* § 3(b)

3

4

5 *see also* Ex. 5

6

7

8 *See* Ex. 1 § 6; Chenhansa Decl.

9 ¶¶ 5-6.

10

11

12 . *See Merced Cty. Sheriff's Employee's Assn. v. Cty.*

13 *of Merced*, 233 Cal. Rptr. 519, 524 (Cal. Ct. App. 1987) ("mutual assent" necessary for contract

14 formation is "determined by objective rather than subjective criteria, the test being what the outward

15 manifestations of consent would lead a reasonable person to believe"); *Binder v. Aetna Life Ins. Co.*,

16 89 Cal. Rptr. 2d 540, 551 (Cal. Ct. App. 1999) ("Mutual assent may be manifested by written or

17 spoken words, or by conduct."); *see* Cal. Civ. Code § 1550.[8]

18 *See*

19 *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("[C]ourts have 'no business' deciding legal

20 disputes or expounding on law in the absence of such a case or controversy.").

21     *Bookham, Inc. v. Unaxis Balzers AG*, No. 06-CV-0885, 2006 WL 2734292 (N.D. Cal. Sept.

22 25, 2006), is instructive.  There, the declaratory judgment defendants moved to dismiss claims

23 seeking declarations of non-infringement and invalidity of the defendants' patents, where "[t]he

24 parties were engaged in licensing negotiations prior to [the plaintiff's] filing of the instant action, and

25 … shortly before the filing of the instant motion, [the plaintiff] sent [the defendants] a letter stating

26

27 [8]

28



'[t]here may be mutual benefit ... in discussing alternative commercial arrangements instead of resolving the issue through the courts.'" *Id.* at *1. Judge Chesney agreed, concluding that the court "lack[ed] jurisdiction over [the plaintiff's] claim for declaratory relief." *Id.*



### 2. Even If This Court Has Jurisdiction, It Should Exercise Its Broad Discretion Not To Hear 23andMe's Trademark Claims.

Even if the Court were to conclude that it has subject matter jurisdiction over 23andMe's declaratory judgment claims, the Court should exercise its discretion and not hear these claims. The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008) ("[I]t is within a district court's discretion to dismiss an action for declaratory judgment."). "The reason for giving this discretion to the district court is to enable the court to make a reasoned judgment whether the investment of judicial time and resources in a declaratory action will prove worthwhile in resolving a justiciable dispute." *Takeda Pharm. Co. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1126 (N.D. Cal. 2014). "Courts must act in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration in exercising discretion over jurisdiction in suits for declaratory

---

9   23andMe's request for a declaration of invalidity falls with its claim for non-infringement. *See, e.g.*, *Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, No. 14-CV-4280, 2016 WL 6963052, at *6 (C.D. Cal. Jan. 28, 2016), *aff'd*, 721 F. App'x 628 (9th Cir. 2018) ("Cancellation may only be sought if there is already an ongoing action that involves a registered mark[.] This is because cancellation under 15 U.S.C. § 1119 creates a remedy for trademark infringement rather than an independent basis for federal jurisdiction. Because plaintiff's declaratory judgment cause of action fails, no ongoing action involving a registered mark remains, thus requiring dismissal of plaintiff's cancellation claim." (citations and quotation marks omitted)).

judgment." *Id.* at 1122 (internal quotation marks omitted).

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████. *See* Chenhansa Decl. ¶¶ 5-8. "[A] court

may take into account the pendency of serious [license] negotiations … in determining to exercise

jurisdiction over a declaratory judgment action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814

(Fed. Cir. 1996). Thus, "[w]hile a court may conclude that ongoing negotiations do not negate the

presence of a controversy for jurisdictional purposes, the court may nonetheless find … that the need

for judicial relief is not as compelling as in cases in which there is no real prospect of a non-judicial

resolution of the dispute." *Id.*; *see also, e.g.*, *Bookham*, 2006 WL 2734292, at *1 ("In light of the

parties' ongoing licensing negotiations, entertaining the instant action for declaratory relief 'would be

inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of

judicial resources.'"). Judicial economy therefore weighs in favor of dismissing 23andMe's

trademark declaratory judgment claims.

## IV.    CONCLUSION

For the foregoing reasons, Ancestry respectfully requests that the court dismiss 23andMe's

complaint in its entirety with prejudice, and rule that the '554 patent is invalid under 35 U.S.C. § 101.


DATED: June 29, 2018                            Respectfully submitted,


                                                By: */s/ Mark D. Selwyn*
                                                Mark D. Selwyn (CA SBN 244180)

                                                mark.selwyn@wilmerhale.com
                                                WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                                950 Page Mill Road
                                                Palo Alto, CA  94304
                                                Telephone: (650) 858-6000
                                                Facsimile: (650) 858-6100

                                                David C. Marcus (CA SBN 158704)
                                                david.marcus@wilmerhale.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone:  (213) 443-5300
Facsimile:  (213) 443-5400

William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Brittany Blueitt Amadi (*pro hac vice*)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorney for Defendants Ancestry.com DNA,
LLC, Ancestry.com Operations Inc., and
Ancestry.com LLC*

1
2
3

ATTORNEY ATTESTATION

4

I, Mark D. Selwyn, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5- 1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

5
6

By: /s/ *Mark D. Selwyn*
Mark D. Selwyn

7
8
9
10

CERTIFICATE OF SERVICE

11

I hereby certify that on June 29, 2018, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

12
13

By: /s/ *Mark D. Selwyn*
Mark D. Selwyn

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28