**Pages 1 - 13**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

23ANDME, Inc.,                      )
                                    )
          Plaintiff,                )
                                    )
   VS.                              )        **NO. C 18-02791 EMC**
                                    )
ANCESTRY.COM DNA, LLC, et al.,      )
                                    )
          Defendants.               )
_____    )

                              San Francisco, California
                              Thursday, November 14, 2019

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                    COOLEY LLP
                    3175 Hanover Street
                    Palo Alto, California   94304
              **BY:  ANGELA DUNNING, ATTORNEY AT LAW**
                    **JOHN OLEKSIUK, ATTORNEY AT LAW**

For Defendants:
                    WILMER, CUTLER, PICKERING, HALE
                    AND DORR LLP
                    950 Page Mill Road
                    Palo Alto, California   94304
              **BY:  MARK D. SELWYN, ATTORNEY AT LAW**

                    DEBEVOISE & PLIMPTON LLP
                    919 Third Avenue
                    New York, New York   10022
              **BY:  DAVID H. BERNSTEIN, ATTORNEY AT LAW**

Reported By:        Marla F. Knox, RPR, CRR
                    Official Reporter

**Thursday - November 14, 2019**                    **1:38 p.m.**

**P R O C E E D I N G S**

**---000---**

THE CLERK:  Calling Civil Action 18-2791, 23andMe, Inc. versus Ancestry.com DNA, LLC, et al.

Counsel, please approach the podium and state your appearances for the record.

MR. BERNSTEIN:  Your Honor, David Bernstein with Debevoise & Plimpton for Defendant Ancestry.

THE COURT:  All right.  Good afternoon.

MR. SELWYN:  Mark Selwyn from Wilmer Cutler also on behalf of Ancestry.

THE COURT:  Good afternoon.

MS. DUNNING:  Good afternoon, Your Honor, Angela Dunning from Cooley on behalf of 23andMe, and with me is my colleague J.P. Oleksiuk.

THE COURT:  Great.  Good afternoon, Counsel.

First of all, let me explain that we are joined this afternoon by the -- Professor Cole's first year civil procedure class from Hastings.  They are watching you very closely.  And your job is to inspire them, not discourage them.  This is an important point in their lives so I hope you will be up to the task.

(Laughter)

THE COURT:  So do we know anything more from Federal

Circuit.

MR. BERNSTEIN:  Yes, Your Honor, the Federal Circuit has ruled.  They affirmed Your Honor's decision.  The patent has been invalidated and of course, the case dismissed.  23 -- it was a very short order issued just days after the argument.

THE COURT:  I saw that.

MR. BERNSTEIN:  23andMe has petitioned for a hearing en banc.  We are not particularly concerned about that, but I will leave it to Ms. Dunning if she wants to address that at all.

THE COURT:  Okay.

MS. DUNNING:  Your Honor, we will see how the Federal Circuit rules on that en banc.

THE COURT:  And you filed your petition on re-hearing en banc already?

MS. DUNNING:  That is my understanding that it has been filed.

MR. OLEKSIUK:  It was filed November 4th, Your Honor.

THE COURT:  Do we know typically how quickly they are acting these days on the Federal petitions?

MR. OLEKSIUK:  They are running on the order of one to two months.  As Your Honor knows, there is not a set deadline for the Federal Circuit.

THE COURT:  Right.  Typically it is a couple of

months?

MR. OLEKSIUK:  Approximately, yes, one to two.

THE COURT:  All right.  And we have a trial date next year in August, so we will have a -- we should know whether this is going to go away well before then it seems like.

MS. DUNNING:  That's right, Your Honor.  The parties did put in a stipulated revised schedule for conclusion of discovery and pretrial and trial proceedings that would push that date to November.  So we would definitely love Your Honor's input on that.

THE COURT:  Okay.  Assuming that doesn't change and we are left with the remainder of the suit, is it your view that the amount of discovery you are asking basically for -- let's see -- two months -- sort of a two-month extension of discovery.  Tell me about what it is that needs to be -- why you need the time.

MS. DUNNING:  Sure, Your Honor.  So this was a determination that the parties made jointly together.

We are exchanging a tremendous amount of data and documents.  The parties have had productive discussions toward attempts to narrow discovery.  We have discussed specific search terms and custodians and other mechanisms to make sure that our discovery is both, you know, full and appropriate but also limited where unnecessary.  But just getting those documents pulled together will take us through December 20,

which is the current discovery cutoff date and doesn't leave any time then to complete the depositions that we are anticipating and to finalize the other written discovery, interrogatory responses and RFA responses.

So what we were proposing is a phased discovery cutoff where the parties would keep the December 20th cutoff date for substantial completion of their respective document productions.  We don't want to be in a position where everyone is dumping documents on the last day and jamming up for depositions.  But this would allow us to schedule depositions on both sides in an orderly way which would be very difficult with the holidays coming up and some of the other things that make scheduling hard.

**THE COURT:**  How many depositions are you anticipating?

**MS. DUNNING:**  On the party's side, Your Honor, I think we are anticipating somewhere between six and eight party depositions per side, and then there may be some third-party depositions that we haven't factored into that yet.

**MR. BERNSTEIN:**  And I would just add, Your Honor, on the need for the extension, one thing that I don't think we anticipated when we set the schedule was -- having collected the documents and reviewed them -- there is an extraordinary amount of personally identified information by the customers. After all, these parties do DNA testing.

So it turns out that the redaction of that information is

going to be very time consuming and unfortunately add time and cost to this.

I would say, I continue to hold out hope -- and the parties have been having discussions, as you know -- that we might further streamline this case.

The false advertising claims in this case deal with advertisements that have been discontinued now since last year. None of those ads on either side are continuing to run, and we actually had a very productive settlement meeting this morning. And one of the things that we did discuss is whether or not the parties might agree ultimately to dismiss out the essentially mooted advertising claims so that we can focus on the very core trademark claim.  With the patent claims also out, I think that would help us streamline things.  And we will continue to have those discussions and see if we can, in fact, streamline discovery in that way.

**THE COURT:**  Are you having -- do those discussions also include an overall global settlement?

**MR. BERNSTEIN:**  They do, Your Honor.  And, in fact, we have exchanged draft settlement agreements; and we spent the morning going through a markup.  Actually, it was very convenient that Your Honor pushed this conference to this afternoon.  It gave us time to meet this morning.

My sense is that we have bridged a lot of the gaps.  There remains one very significant issue.  That is a fundamental

disagreement between the parties.  It is an issue that, you know, I believe, is one that should continue to be discussed. In fact, it is one that we very, very briefly discussed with Judge Corley when we saw her back in September.

Since we saw Judge Corley, there has been one very dramatic change, which is that 23andMe has changed its packaging; and they no longer use the word "ancestry" alone on the front of their packaging.  And that is quite significant for us.  And so it has really helped us move, I think, towards a framework for settlement that could work.

From our perspective, this one issue is quite a thorny one; but I know Judge Corley is very effective, and we would be willing to go back and see her again and see if she can't help the parties bridge the gap on that.

**THE COURT:**  That is good to hear.  You have indicated the parties are intent upon re-visiting with her or another private mediator.  Is the plan to go back to Judge Corley at this point?

**MS. DUNNING:**  I think, Your Honor, the parties are still in the process of conducting discussions between themselves.  I do think there are a number of issues that we have yet to bridge and that it -- we may or may not be able to bridge.

And so I think it makes sense for us to continue to have some of those discussions now.  And then if a further referral

to Judge Corley makes sense, we can certainly alert the Court or she has invited us to get back in touch with her directly.

THE COURT:  You can get back in touch with her directly.  Just let us know if you are going to go back to her so at least I'm aware of that.

MS. DUNNING:  Certainly.

MR. BERNSTEIN:  I know how busy Judge Corley is.  She is quite an effective settling magistrate judge.  It is hard to get on her calendar.

I'm also cognizant that the parties are both -- with this December 20th deadline for substantial completion of discovery -- we will both be spending hundreds and hundreds of thousands of dollars in the coming weeks and well over a million dollars by the time we get into depositions starting the first of the year.

My sense -- and I appreciate it may not be shared by 23andMe -- is the sooner we see Judge Corley, the more opportunity there is for a settlement that might actually make sense because it saves the parties the burden of --

THE COURT:  Well, that's why we try to get you in some early form of ADR if it's possible.

Is there any reason why you can't -- or maybe with the help of this Court -- sort of see if you can sort of reserve a date with Judge Corley knowing how far in advance -- I don't know how far she is but -- I mean, ideally get in there sooner

rather than later before you spend the next million dollars.

MR. BERNSTEIN: That would be our preference, Your Honor. And indeed both of our clients are here in the courtroom. And so I think hearing from the Court -- and our clients can take that back -- is helpful for some -- I would think for some encouragement for us to do that. So I would be all in favor.

The reason we reserved the option of a private mediator is if we just can't get in front of her fast enough --

THE COURT: Right.

MR. BERNSTEIN: -- the parties might want to consider that. I personally think that this could really be the final step that would help break the logjam.

MS. DUNNING: So we are open to reserving a date with Judge Corley. As my colleague mentioned, there are some issues that may be rotating items. And if the parties can't bridge them, then we are open to a conversation with Judge Corley about it.

THE COURT: Okay. Why don't I -- just so we have a marker down, Angie -- make a referral back to Judge Corley just so -- and without the parties' objections, I will send her a note to tell her you are going to go back to her and hopefully look for a date if she is available. I know she is going to be out of the country first part of January, so she may be double busy. But we will see.

You know, since you will have completed substantial document production by the 20th, and you will already be into deposition work, I mean, the earlier before you complete all that February 28th, the better.

MR. BERNSTEIN:  Yeah, I mean, from our sense, Your Honor, if Judge Corley had time in December, we certainly would be willing to sit down and try to present these issues.

The one issue that -- that is the major issue between us -- for obvious reasons under Rule 408, we don't want to get into it here.

THE COURT:  Yes.

MR. BERNSTEIN:  The one major issue is one I don't think is going to really be tremendously impacted by the document discovery.  I think it really is going to be one that is impacted more by expert discovery.  So I think an early opportunity to see her if she is available could be very helpful.

THE COURT:  And your expert phase will start on March 20th with the experts?

MR. BERNSTEIN:  So the opening expert reports would be March 20th, Your Honor.

THE COURT:  Obviously, by that point you would have spent a fair amount retaining and preparing for that.  So like I say, if you can get in there in advance of that, that would be great.

Well, I will make the referral back to Judge Corley to be -- with a settlement conference to be held as soon as practicable; hopefully no later than end of January but preferably in December if she is available.  That, I don't know.

And if for some reason she is not at all available, I will make sure she indicates that to you so you can look at the option of private mediation if necessary.

**MS. DUNNING:**  That sounds fine, Your Honor.  I would just make one further point about the proposed schedule just to the extent it is helpful for Your Honor.

**THE COURT:**  Yeah.

**MS. DUNNING:**  Counsel did carefully craft that schedule.  I know that Mr. Bernstein has some extensive out-of-the-country travel and other family commitments.  We also have out-of-the-country travel.  And so we did try to work out a schedule that would be, you know, as efficient, as possible while still taking those matters into account and Your Honor's own availability.  So I think -- I think it is workable, and we did try to comply with the deadlines in Your Honor's order so that there are at least as many -- as much time as your order requires before the key events in question.

**THE COURT:**  Right.  Mainly dispostive motion hearing date and preliminary -- or pretrial conference.

**MS. DUNNING:**  Correct, Your Honor.

**THE COURT:**  There needs to be some space in there. Angie, how is the November -- did you give me the November -- November 16th?  They are proposing November 16th, 2020 as a trial date.  How are we looking?

**THE CLERK:**  Yes, you are available November 16th.

**THE COURT:**  How long of a trial do you think -- assuming the case stays largely as is, focusing primarily on the trademark question.

**MS. DUNNING:**  I do think that we believe it would conclude before the Thanksgiving holiday, so five to eight days would be sufficient to conclude.

**MR. BERNSTEIN:**  My guess would be five days, but it gives us a few extra days in the beginning of the next week just in case.

**THE COURT:**  Okay.  All right.  I will adopt your schedule and get out a new scheduling order with the dates you proposed with the understanding that you are continuing to try to resolve this case; will go back to Judge Corley, if possible.

I will add that, you know, in my experience as a magistrate judge, it seems like of all things that are almost tailored to mediation or a settlement conference, trademark issues are it because there is so much that you can do.  It is not just a binary, you know, question.  It just -- I know this

is complicated, but I'm hopeful that with your experience and with Judge Corley's experience and hopefully with the interest of the principals here that you can get something done.  So I urge you to --

**MR. BERNSTEIN:**  Your Honor thank you very much.

**MS. DUNNING:**  Thank you, Your Honor.

**THE COURT:**  Do we need to schedule -- maybe we should probably do one check-in at some point perhaps before you launch into the expert -- maybe in early March, mid-March.

**MS. DUNNING:**  That should be fine, Your Honor.

**THE CLERK:**  March 12th, Your Honor, 10:30.

**MR. BERNSTEIN:**  That works for us, Your Honor.

**THE COURT:**  All right.  Assuming the case has not settled by then, we will see you then.

**MS. DUNNING:**  Thank you, Your Honor.

**THE COURT:**  Thank you.

(Proceedings adjourned at 1:53 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Wednesday, December 11, 2019

_____

Marla F. Knox, RPR, CRR
U.S. Court Reporter